JAMES A. BAGNOLA, Plaintiff-Appellant, v. SMITHKLINE BEECHAM CLINICAL LABORATORIES *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—00—0224

Opinion filed August 23, 2002.

Romanucci & Blandin, of Chicago (Stephan D. Blandin and Christopher P. Carr, of counsel), for appellant.

Baker & McKenzie, of Chicago (Michael A. Pollard and David G. Wix, of counsel), for appellee SmithKline Beecham Clinical Laboratories.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and David Graver, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:
Plaintiff, James Bagnola, appeals an entry of summary judgment in favor of defendants, SmithKline Beecham Clinical Laboratories (SBCL) and the City of Chicago (City) on his cause of action for spoliation of evidence. In 1991, the Chicago police department ordered plaintiff, a Chicago police officer, to submit to random drug testing. Plaintiff submitted two urine specimens, which were sent to SBCL for testing. Both specimens tested positive for cocaine. The superintendent of the Chicago police department (the Department) brought charges against plaintiff on September 4, 1992, seeking to discharge plaintiff from his position as a Chicago police officer for knowingly possessing cocaine. SBCL destroyed both urine specimens in February of 1994. On March 29, 1995, plaintiff filed in the law division of the circuit court of Cook County this cause of action for spoliation of evidence against the City and SBCL based on the destruction of the urine

specimens. The Police Board of the City of Chicago (the Board) conducted an extensive evidentiary hearing regarding plaintiff's discharge from his position as a Chicago police officer. The hearing took place in May, June, July and August of 1995. In November 1995, the Board found that despite the destruction of the specimens, based on the positive drug tests, plaintiff violated police department rules and ordered him discharged. Plaintiff filed an administrative review in the circuit court, which upheld the Board's decision. Plaintiff appealed, and this court affirmed. *Rodriguez v. Bagnola,* 297 Ill. App. 3d 906 (1998).

Plaintiff's cause of action for spoliation of evidence against the City and SBCL alleges that because of the destruction of the urine specimens, plaintiff could not have the urine specimens independently analyzed and could not present an effective defense to the Department's charges. Defendants moved for summary judgment. The City argued it had no duty to preserve the specimens, collateral estoppel and *res judicata* barred plaintiff's cause of action, and it was immune from liability. SBCL similarly argued that plaintiff's cause of action was barred and that it owed plaintiff no duty to preserve the specimens. The trial court granted the motions for summary judgment.

On appeal, plaintiff argues that the trial court erred in granting summary judgment because (1) the defendants had a duty to preserve the urine specimens; (2) neither the doctrine of collateral estoppel nor the doctrine of *res judicata* barred his cause of action; and (3) the City was not immune from liability for destruction of the specimens. We affirm.

## BACKGROUND

On February 19, 1973, plaintiff became a Chicago police officer. Based on allegations of drug abuse, the Department ordered plaintiff to provide a urine specimen for drug testing on July 19, 1991. Consistent with Department rules, in July of 1991, plaintiff provided two urine specimens, which were placed in separate bottles, A and B. Plaintiff was not able to provide enough urine to fill both bottles, so after filling bottle A, plaintiff drank some water and waited 35 minutes before providing the second sample, bottle B. Pursuant to a contract between SBCL and the City of Chicago, the Department sent bottle A to SBCL for drug testing. Bottle B remained with the Department for testing by a laboratory of plaintiff's choice, if sample A tested positive. SBCL performed two tests on bottle A. Both tests indicated that plaintiff had used cocaine within three days of the date of the urine specimen. A few months later, in September 1991, plaintiff requested

that the Department send bottle B to SBCL for testing. This specimen also tested positive for cocaine. The bottle B urine specimen, however, contained a lower level of cocaine metabolites than the bottle A specimen. Although the contract between the City of Chicago and SBCL required SBCL to maintain all positive specimens for three years, SBCL destroyed both specimens in February 1994.

On September 3, 1992, the Department charged plaintiff with violating three Department rules based on the positive drug tests. On March 11, 1993, the Board dismissed the charges against plaintiff because the Department failed to advise plaintiff of his right to counsel before he submitted to the drug testing. The Department appealed this decision to the circuit court. While the appeal was pending, the supreme court held that police officers did not have a statutory right to be advised of a right to counsel before submitting to a drug test. *Corgiat v. Police Board of the City of Chicago*, 155 Ill. 2d 384, 391 (1993). On the basis of *Corgiat*, the circuit court vacated the Board's dismissal in 1993 and remanded the matter for a hearing on the superintendent's charges.

On March 2, 1994, Bagnola requested the production of both bottles from the Department. The Department responded that plaintiff would need to get those specimens directly from SBCL. Plaintiff was repeatedly advised that he should request the specimens from SBCL. Plaintiff's counsel informed the hearing officer that he first subpoenaed the records from the testing and the specimens in 1992. The hearing officer told plaintiff's counsel that only the circuit court could enforce the subpoena and order SBCL to turn over any additional materials. The record reflects that plaintiff's original production request and subpoena in 1992 only requested documents from SBCL. Neither that production request nor that subpoena requested production of the actual specimens from SBCL.

On October 26, 1994, plaintiff sent a notice of records deposition and subpoena to SBCL and requested the two specimens. SBCL provided both the plaintiff and the City the litigation packages for both the A and B specimens. SBCL notified plaintiff that both urine specimens A and B had been destroyed in February 1994. SBCL also reported that it did not have the procedural manuals for these tests because it routinely destroys these manuals one year after the test. Destruction of the urine specimens was contrary to the terms of the contract between SBCL and the City, which required SBCL to keep all positive specimens for at least three years.

At the administrative hearing, the Department relied on the positive drug tests to prove that plaintiff violated Department rules. At the outset of the hearing on May 25, 1995, the plaintiff filed a lengthy

motion *in limine* and to dismiss the charges. In that motion, plaintiff argued that the City and/or SBCL willfully and intentionally destroyed the A and B bottle specimens and that SBCL was the City's agent. The extensive evidence from the administrative hearing that took place over several days in 1995 is summarized in our previous decision and will not be repeated here except where necessary. See *Rodriguez*, 297 Ill. App. 3d 906.

We note that during the administrative hearing, plaintiff admitted to having a problem with cocaine in 1988 and an alcohol problem in 1991 for which he sought treatment. Plaintiff denied any drug use in July 1991. He testified that the positive drug test results were a mistake or possibly that his wife put cocaine in his food and he unknowingly ingested it. He explained that he was going through a "very rocky and ugly marriage breakup" and his wife did not want him to have custody of their child. During the administrative hearing, plaintiff argued that the City and SBCL, as its agent, had willfully and intentionally destroyed the A and B urine specimens, which prevented him from analyzing the specimens and preparing an effective defense in the administrative proceeding.

Plaintiff also called as a witness Dr. Michael Evans, a toxicologist. Dr. Evans testified that the difference in cocaine metabolites between the two specimens indicated error in the testing; however, he could not demonstrate any error because both specimens had been destroyed. He testified that the initial results were erroneous due to the "ninefold difference of cocaine metabolite between the two specimen bottles." Dr. Evans indicated that the tests were worthless because the manuals explaining the testing process had been destroyed by SBCL. In rebuttal, the Department called M.P. George, a director of forensic toxicology at the SBCL lab. M.P. George testified that the procedural manuals were not needed to evaluate the validity of the tests. He indicated that the differences in the level of cocaine metabolites could be explained by differences in the concentration of the two urine specimens, which were taken 35 minutes apart, and by the time delay in obtaining and testing bottle B.

On November 27, 1995, the Board found plaintiff guilty of the charges related to the positive drug tests and ordered him discharged. Specifically, the Board found that SBCL "inadvertently" destroyed the urine samples, that the "Superintendent cannot be faulted for SBCL's destruction of the evidence," and that plaintiff "had a full opportunity to test the B bottle and did so, producing a positive finding for the cocaine metabolites." The Board also found that SBCL's inadvertent destruction of the urine samples did not warrant dismissal of the charges. The Board found that plaintiff's constitutional rights were

not violated in any way. The Board concluded that the presence of the cocaine metabolite was conclusive evidence of plaintiff's illegal possession of cocaine. Plaintiff filed a complaint for administrative review with the circuit court. The complaint sought reversal of the Board's decision. At the circuit court hearing on December 3, 1996, the court heard argument regarding the destruction of the A and B urine specimens. The circuit court affirmed the Board's decision and findings.

Plaintiff then appealed to this court. *Rodriguez*, 297 Ill. App. 3d 906. Plaintiff argued, in part, that the Board's decision was against the manifest weight of the evidence and that plaintiff's constitutional rights were violated because SBCL destroyed the A and B urine specimens. Rejecting plaintiff's claim that the Board's decision was against the manifest weight of the evidence, this court found that the case represented "a battle of the experts" and refused to disturb the credibility findings of the Board. *Rodriguez*, 297 Ill. App. 3d at 916-17. This court also concluded that the destruction of the urine specimens did not violate plaintiff's due process rights. In reaching this conclusion, this court noted the lack of any evidence that the specimens were destroyed intentionally or tampered with, that the Board found that the specimens were destroyed inadvertently, that plaintiff had an opportunity to test independently the urine specimen from bottle B and chose to send it to SBCL and that plaintiff "had ample opportunity to subpoena Sample A before it was destroyed." *Rodriguez*, 297 Ill. App. 3d at 917-18. The Board's decision to discharge plaintiff was affirmed. *Rodriguez*, 297 Ill. App. 3d at 922.

Plaintiff alleged in his separate lawsuit for spoliation of evidence, which was filed in the law division in March of 1995, that both the City and SBCL had a duty to preserve the specimens and breached that duty in destroying them. Plaintiff alleged as a result of this destruction, he could not have the urine specimens independently analyzed and could not present an effective defense to the Department's charges. Defendants moved for summary judgment. In its motion, the City argued that it had no duty to preserve the specimens, that plaintiff's cause of action was barred by *res judicata* and collateral estoppel, and that the City was immune from liability. SBCL similarly argued that plaintiff's cause of action was barred and that it owed plaintiff no duty to preserve the specimens. The trial court granted the motions for summary judgment "for the reasons contained" in the motions. Plaintiff appealed.

While "the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit [citation], it is a drastic means of disposing of litigation and therefore should be al-

lowed only when the right of the moving party is clear and free from doubt. [Citations.]" *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). We review the circuit court's grant of a motion for summary judgment *de novo*. *Ruane v. Amore*, 287 Ill. App. 3d 465, 473 (1997).

## RES JUDICATA

■ We address whether the doctrine of *res judicata* bars plaintiff's cause of action. The doctrine of *res judicata* precludes relitigation of claims or issues previously decided. It is divided into two branches: estoppel by judgment, referred to as *res judicata*, and estoppel by verdict, also known as collateral estoppel. *Osborne v. Kelly*, 207 Ill. App. 3d 488, 490 (1991). Estoppel by judgment has broad preclusive effect and issues actually raised, as well as issues that could have been raised, in the first proceeding may not be relitigated in a subsequent proceeding. *Osborne*, 207 Ill. App. 3d at 491. *Res judicata* provides that a final judgment on the merits in one lawsuit bars a subsequent suit between the parties or their privies regarding the same cause of action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334-35 (1996). Collateral estoppel has a more limited preclusive effect and may be applied when the issue decided in the prior adjudication is identical with the issue in the current action, there was a final judgment on the merits in the prior adjudication and the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior adjudication. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77 (2001). Both *res judicata* and collateral estoppel apply to administrative decisions that are adjudicatory, judicial, or quasi-judicial in nature. *Martinez v. Admiral Maintenance Service*, 157 Ill. App. 3d 682, 684 (1987); *Schratzmeier v. Mahoney*, 246 Ill. App. 3d 871, 875 (1993).

■ Under the doctrine of *res judicata*, the judgment in the first suit is conclusive not only on the matters actually decided but also on all issues that could have been decided during that suit. *La Salle National Bank v. County Board of School Trustees*, 61 Ill. 2d 524, 529 (1975). The doctrine of *res judicata* or estoppel by judgment applies when the following three criteria are satisfied: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). The doctrine of *res judicata* promotes judicial economy by eliminating repetitive litigation and protecting litigants from the burden of repetitive litigation. *Spiller v. Continental Tube Co.*, 95 Ill. 2d 423, 432 (1983). The policies underlying *res judicata* are as applicable to the administrative process as they are to the

judicial process. *Osborne*, 207 Ill. App. 3d at 491. Those policies include providing consistency of judgments, affording litigation finality and promoting judicial economy by disposition of all claims based upon a common core of operative facts in a single action. *Osborne*, 207 Ill. App. 3d at 491.

■ In this case, the City asserts the doctrine of *res judicata* as a defense and SBCL expressly adopts that argument. The City contracted with SBCL to perform all the urinalyses for the Chicago police department. The prior administrative proceeding and proceeding for administrative review in the circuit court included plaintiff and the City of Chicago. "Privity is said to exist between ' "parties who adequately represent the same legal interests." ' [Citation.]" *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992). Here, there is an identity of parties or their privies, which satisfies the third prong of the *res judicata* doctrine. We note plaintiff does not contest this element.

We next address whether under the doctrine of *res judicata* there was a final judgment on the merits rendered by a court of competent jurisdiction. As previously noted, generally, administrative agency decisions have *res judicata* effect where the agency's determination is made in proceedings that are judicial in nature. *Osborne*, 207 Ill. App. 3d at 491. After an extensive adversarial hearing conducted under oath and on the record, the Board determined that plaintiff violated police department rules and ordered plaintiff's discharge. Plaintiff filed a complaint for administrative review with the circuit court seeking reversal of the Board's decision. The circuit court heard argument regarding the destruction of the bottle A and B urine specimens. The circuit court affirmed the Board's decision and findings. Therefore, a court of competent jurisdiction entered final judgment in the first lawsuit. We note this is not a case where the first lawsuit was dismissed by way of summary judgment or some other pretrial motion. Here, there was a full hearing on the merits by the Board and the circuit court entered a final judgment on the merits of plaintiff's administrative review action. Thus, the first prong of the *res judicata* doctrine was satisfied.

■ The final element of *res judicata* is whether there is an identity of cause of action in the context of the administrative proceeding, the proceeding for administrative review in circuit court and plaintiff's spoliation claim. To determine whether there is an identity of cause of action for purposes of *res judicata*, Illinois courts have traditionally relied on two separate tests: the "same evidence" test and the "transactional test." *Rodgers v. St. Mary's Hospital*, 149 Ill. 2d 302, 311-12 (1992).

Recently, however, our supreme court has rejected the same evidence test and adopted the transactional test as determinative of whether there is an identity of cause of action under the doctrine of *res judicata. River Park, Inc.*, 184 Ill. 2d at 311. Under the transactional test, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc.*, 184 Ill. 2d at 311. In addition, the evidence for both causes of action need not overlap but only must arise from the same transaction. *River Park, Inc.*, 184 Ill. 2d at 311. In *River Park, Inc.*, the supreme court found the transactional test more pragmatic and consistent with the approach of the Restatement (Second) of Judgments and noted:

> "Under this approach, a claim is viewed in 'factual terms' and considered 'coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; *** and regardless of the variations in the evidence needed to support the theories or rights.' " *River Park, Inc.*, 184 Ill. 2d at 309, quoting Restatement (Second) of Judgments § 24, Comment *a*, at 197 (1982).

The supreme court recognized that the current version of the Restatement supports adoption of the transactional test:

> " '(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar[,] *** the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.' " *River Park, Inc.*, 184 Ill. 2d at 311-12, quoting Restatement (Second) of Judgments § 24, at 196 (1982).

The supreme court noted the Restatement also indicates that a plaintiff's claim can be barred in the second action even though plaintiff requests in the second action:

> " '(1) To present evidence or grounds or theories of the case not presented in the first action, or
> (2) To seek remedies or forms of relief not demanded in the first action.' " *River Park, Inc.*, 184 Ill. 2d at 312, quoting Restatement (Second) of Judgments § 25, at 209 (1982).

In this case, applying the transactional test, we find an identity of cause of action in the context of plaintiff's administrative proceeding and proceeding for administrative review in the circuit court and the spoliation action. Both lawsuits arise out of the same transaction, namely, plaintiff's discharge from the police force because of a positive drug test. In the administrative proceeding, plaintiff argued that the

Department's failure to produce the urine specimen rendered the results of the drug tests suspect and that the charges should be dismissed. Plaintiff asked the Board to exclude all testimony based on the urine specimens because the destruction of the specimens allegedly made it impossible for him to defend against the charge of drug use. Plaintiff challenged his discharge based on the accuracy of the test results of the urine specimens. Plaintiff claimed he was prejudiced and injured by not being able to retest the urine samples. Plaintiff repeatedly made these same arguments before the Board, the circuit court and during the appeal of the Board's decision to the appellate court. *Rodriguez*, 297 Ill. App. 3d 906.

Plaintiff also maintained that SBCL was an agent of the City and that the City should be charged with SBCL's conduct in destroying the specimens. Before the Board, the circuit court and this court plaintiff argued that the destruction of the urine specimens violated his constitutional rights. *Rodriguez*, 297 Ill. App. 3d at 917-18. Before the circuit court and this court, plaintiff relied on the destruction of the specimens to demonstrate that the Board's decision was against the manifest weight of evidence. *Rodriguez*, 297 Ill. App. 3d at 916-17.

In this lawsuit alleging spoliation of evidence, plaintiff raises the same set of factual issues. Plaintiff claims that the destruction of the urine specimens prevented him from independently testing the urine specimens, thereby destroying his ability to successfully defend himself. His cause of action for spoliation, alleging intentional and negligent conduct, is based on the destruction of the specimens and the loss of his position as a police officer. Therefore, the administrative proceeding before the Board and the administrative review in the circuit court, as well as the spoliation action, arise out of a "single group of operative facts" or "transaction." *River Park*, 184 Ill. 2d at 307. There is an identity of cause of action under the doctrine of *res judicata*.

■ The Illinois Supreme Court has determined that a plaintiff can bring a cause of action for the destruction of evidence material to a lawsuit and the trier of fact who heard the underlying case is in the best position to resolve the spoliation claim. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 198 (1995). In *Boyd*, the plaintiff was injured when a propane heater exploded at his place of employment. The plaintiff filed a workers' compensation claim against his employer and his employer's insurance company. Travelers Insurance took possession of the heater to test it, lost it, and admitted never testing the heater. The plaintiff filed suit against the manufacturer of the heater and later joined Travelers as a defendant, claiming that Travelers' loss of the heater prejudiced the products liability action against the

manufacturer. After dismissing the spoliation of evidence claim as premature, the trial court certified the question of whether a spoliation action can be brought at the same time as the underlying action.

Although the Illinois Supreme Court in *Boyd* refused to recognize an independent spoliation of evidence tort, the court held that an action for spoliation of evidence can be stated under existing negligence law. *Boyd*, 166 Ill. 2d at 194. The court discussed the elements of a negligence action for spoliation of evidence. The court indicated that "[a] plaintiff need not show that, but for the loss or destruction of the evidence, the plaintiff would have prevailed in the underlying action." *Boyd*, 166 Ill. 2d at 196 n.2. The court said that this was too difficult a burden, as it may be impossible to know what the missing evidence would have shown. *Boyd*, 166 Ill. 2d at 196 n.2. The court added: "A plaintiff must demonstrate, however, that but for the defendant's loss or destruction of the evidence, the plaintiff had a reasonable probability of succeeding in the underlying suit. In other words, if the plaintiff could not prevail in the underlying action even with the lost or destroyed evidence, then the defendant's conduct is not the cause of the loss of the lawsuit." *Boyd*, 166 Ill. 2d at 196 n.2.

Based on this burden, the court encouraged plaintiffs to join their spoliation action with the underlying suit on which the spoliation is based. *Boyd*, 166 Ill. 2d at 198-99. The court believed that the trier of fact who heard the underlying case and resolved it would be in the best position to rule on whether but for the destruction of the evidence plaintiff had a reasonable probability of succeeding in the underlying case. The court also noted that the spoliation and underlying action "arise out of closely related 'transactions' " and contain "a significant question of law or fact that is common to the parties." *Boyd*, 166 Ill. 2d at 199. *Boyd* recognized the benefit provided by trying the underlying case and the spoliation case together: "A single trier of fact would be in the best position to resolve all the claims fairly and consistently. If a plaintiff loses the underlying suit, only the trier of fact who heard the case would know the real reason why." *Boyd*, 166 Ill. 2d at 198.

*Boyd*, therefore, supports our conclusion that plaintiff's spoliation action and his complaint for administrative review satisfy the same transaction test for *res judicata* purposes. Plaintiff's positive urine test for cocaine provided the independent basis to discharge plaintiff from his position as a Chicago police officer for knowingly possessing cocaine. The Board, the circuit court, and this court found evidence of the positive drug test sufficient to support the charges against plaintiff. Both the Board and this court found that plaintiff had the opportunity to independently test the specimen from bottle B, but chose to have SBCL test that sample.

These same positive urine tests, and the failure to preserve them, form the essence of plaintiff's spoliation cause of action against the City and SBCL. Regarding the spoliation claim, plaintiff argues "Nothing in the record of the proceeding from the Police Board and subsequent administrative review indicate that there was a finding Bagnola would still have lost if he had independently tested both specimen bottles in light of his expert's testimony that the initial results were erroneous due to the nine-fold difference of cocaine metabolites between the two specimen bottles."

However, the Board, the circuit court and this court have previously rejected the arguments made by plaintiff as the basis for the spoliation action regarding the difference of cocaine metabolites between the urine specimens. Plaintiff's contention that he was prejudiced as a result of the destruction of the urine specimens was addressed and rejected by the Board, the circuit court and the appellate court. The Board determined that the difference between the cocaine metabolite concentration in the two specimens did not undermine the finding that plaintiff had used cocaine in violation of the Department rules. The circuit court affirmed the Board's decision.

On appeal, this court found the Board's ruling was not against the manifest weight of the evidence. *Rodriguez*, 297 Ill. App. 3d at 916. In concluding the Board's findings were not against the manifest weight of the evidence, we recognized there was a "battle of the experts." *Rodriguez*, 297 Ill. App. 3d at 916. We noted the Board found "unpersuasive" plaintiff's expert's opinion that the drug test results were "physiologically improbable." *Rodriguez*, 297 Ill. App. 3d at 916. The Board found plaintiff "had a full opportunity to test the B bottle and did so, producing a positive finding for the cocaine metabolite." This court found that plaintiff had "ample opportunity" to subpoena the first urine specimen, bottle A, before it was destroyed and the destruction of that specimen was not a constitutional violation. *Rodriguez*, 297 Ill. App. 3d at 917-18. This court further concluded that plaintiff did have the opportunity to test independently the second urine specimen, bottle B, and chose to send that specimen to SBCL for testing. *Rodriguez*, 297 Ill. App. 3d at 918. By affirming the Board, this court rejected the arguments and theories which formed the basis for plaintiff's spoliation action.

■ Plaintiff contends in his brief that he "is not relitigating the issue of any due process rights violation or his termination by the Police Board. They are two entirely different legal issues and proceedings." Plaintiff then argues "Accordingly, it is inappropriate to apply *res judicata* and collateral estoppel to this common law claim for civil damages." However, plaintiff fails to cite any authority in support of

that argument. More importantly, plaintiff does not address the principles relied upon by the City in its brief and discussed by the Illinois Supreme Court in *River Park, Inc.* adopting the transactional test as determinative of whether there is an identity of cause of action under the doctrine of *res judicata*. Plaintiff's argument fails to recognize that under the transactional test adopted in *River Park, Inc.* by the Illinois Supreme Court, separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief or raise different legal issues. *River Park, Inc.*, 184 Ill. 2d at 311. Here, both causes of action arise out of a single group of operative facts from the same incident or transaction. Plaintiff's spoliation action and his complaint for administrative review satisfy the transactional test under the doctrine of *res judicata*. There is an identity of cause of action under the doctrine of *res judicata*. The requirements for *res judicata* are therefore satisfied. The doctrine of *res judicata* operates as a bar to plaintiff's spoliation claim.

## COLLATERAL ESTOPPEL

■ In addition to the doctrine of *res judicata*, the doctrine of collateral estoppel is applicable in the instant case and operates as a bar to plaintiff's spoliation claim. Collateral estoppel is an equitable doctrine that promotes fairness and judicial economy by preventing relitigation of issues that have already been resolved in earlier actions. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77 (2001). The requirements for application of collateral estoppel are: (1) the issue decided in the prior adjudication is identical to that presented in the current action; (2) the party against whom the estoppel is asserted was a party to or in privity with a party to the prior adjudication; and (3) the prior adjudication resulted in a final judgment on the merits. *Du Page Forklift*, 195 Ill. 2d at 77.

Here, plaintiff does not dispute that the second and third requirements of the doctrine have been satisfied. Indeed, as previously indicated, a final judgment was entered in the earlier administrative action, and plaintiff was a party to that action. Thus, the issue is whether the first element for application of the doctrine of collateral estoppel has been satisfied. We must determine whether the issue decided in the prior adjudication is identical to that presented in the current action. *Du Page Forklift*, 195 Ill. 2d at 77. The party relying on collateral estoppel has the heavy burden of showing with certainty and clarity what the prior judgment determined. *Peregrine Financial Group, Inc. v. Martinez*, 305 Ill. App. 3d 571, 581 (1999).

In order to obtain a judgment in his favor in the instant spoliation action, plaintiff would have to prove, among other things, the element of causation. *Boyd,* 166 Ill. 2d at 196. As we previously noted, to satisfy this element, plaintiff would have to establish that but for the destruction of the urine specimens, he would have had a "reasonable probability" of successfully defending himself in the administrative action brought against him by the Department. *Boyd,* 166 Ill. 2d at 196 n.2. The City and SBCL contend this issue was actually litigated and conclusively and necessarily decided in their favor in the former administrative action and that plaintiff is therefore now precluded from relitigating it in the current spoliation action. Plaintiff argues that "[n]othing in the record of proceedings from the Police Board, and subsequent administrative review indicates that there was a finding that [plaintiff] would still have lost if he had independently tested both specimen bottles."

A review of plaintiff's motion *in limine* and to dismiss the charges, the transcript of the administrative hearing, and the Board's written findings and decision demonstrates that the factual issue of whether plaintiff would have had a "reasonable probability" of successfully defending himself at the administrative hearing had the urine specimens not been destroyed was actually litigated and necessarily decided by the Board. Plaintiff's motion *in limine* and to dismiss charges, which was filed before the hearing, sought to bar the Department from introducing any evidence obtained from the testing and analysis of the two urine specimens. Plaintiff specifically argued in the motion that he "ha[d] no ability to refute the test results, because he ha[d] been prevented from having the sample independently tested by another laboratory in defense of these charges." That argument is the essence of plaintiff's spoliation claim.

During the administrative hearing plaintiff reiterated his argument that the destruction of the urine specimens severely prejudiced his ability to defend himself against the allegation that he knowingly possessed cocaine. In support of this argument, plaintiff called Dr. Evans, who testified that the difference in cocaine metabolites between the two samples indicated the test results were erroneous, but that he could not demonstrate any error because both the specimens and the procedural manuals had been destroyed. Dr. Evans testified that in his opinion the difference in the metabolite levels between the A and B urine specimens was physiologically improbable. The Department then called M.P. George, a director of forensic toxicology at the SBCL lab, as a rebuttal witness. He testified that the difference in the level of cocaine metabolites could be explained based upon the difference in the concentration of the two urine specimens, which were taken 35

minutes apart, and based upon the length of time that elapsed before the second specimen was tested, which amounted to approximately two months. Counsel for plaintiff, in turn, extensively cross-examined M.P. George. Thus, the motion *in limine* and to dismiss charges, and the testimony presented at the administrative hearing, reflects that the parties did actually litigate the issue of whether the destruction of the specimens prejudiced plaintiff's ability to defend himself.

Furthermore, the Board's written decision and findings reflect it determined that the destruction of the specimens did not negate any "reasonable probability" he might have had of successfully defending himself. In its decision, the Board denied plaintiff's motion *in limine* and to dismiss the charges, specifically finding that plaintiff "had a full opportunity to test the B bottle and did so, producing a positive finding for the cocaine metabolite." This finding demonstrates that the Board rejected the argument in plaintiff's motion that the destruction of the specimens prevented him from having them tested by another laboratory to refute the accuracy of the test results obtained by SBCL. In addition, the Board found that plaintiff failed to demonstrate any prejudice and that "[SBCL's] inadvertent destruction of the urine sample here does not require dismissal of the case." In support of its decision to uphold plaintiff's discharge, the Board found that plaintiff rendered a urine specimen which contained cocaine metabolite, and that "[t]he presence of this metabolite in the urine thus is conclusive evidence that [plaintiff] illegally possessed cocaine." These findings reflect that the Board found the testimony of toxicologist M.P. George credible and rejected the factual basis for plaintiff's argument that he would have had a "reasonable probability" of successfully defending himself in the underlying suit had the urine specimens not been destroyed. Finally, because the sole basis for plaintiff's discharge was his possession of cocaine and the test results constituted the primary evidence establishing that possession, we conclude the Board's determination that the results were accurate and that the destruction of the samples did not prejudice plaintiff's ability to defend himself were necessary to its decision.

We are mindful that even if the threshold requirements of the collateral estoppel doctrine are satisfied, the doctrine should not be applied unless it is clear that no unfairness results to the party being estopped. *Kessinger v. Grefco, Inc.*, 173 Ill. 2d 447, 467-68 (1996). In deciding whether unfairness will result, a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his or her case. 50 C.J.S. *Judgments* § 779 (1997).

We find that application of the doctrine of collateral estoppel will

not result in unfairness to plaintiff. Here, unlike the typical spoliation case, plaintiff actually examined and tested the evidence in question before its destruction. Plaintiff had an opportunity to have the urine specimen contained in bottle B independently tested. At that point, he chose SBCL to conduct the testing of the urine specimen in bottle B. The test performed on bottle B by SBCL on plaintiff's behalf, pursuant to plaintiff's request, produced a positive finding for the cocaine metabolite. Moreover, as previously noted, plaintiff had ample opportunity to litigate, and actually did litigate, the issue of whether the destruction of the urine specimens prevented him from challenging the accuracy of the drug tests and prevented him from presenting an effective defense. After an extensive hearing, the Board rejected this argument, finding that the test results were accurate and established plaintiff knowingly possessed cocaine. The circuit court affirmed the Board's findings on administrative review and its decision, in turn, was affirmed by this court. *Rodriguez*, 297 Ill. App. 3d at 922. The requirements for application of collateral estoppel have been satisfied. The issue decided in the prior adjudication is identical to that presented in the current action. For the reasons previously discussed, we conclude that the doctrine of collateral estoppel is applicable in the instant case and operates as a bar to plaintiff's spoliation claim.

## CONCLUSION

Pursuant to the doctrines of *res judicata* and collateral estoppel, we find that the judgment in the first proceeding is conclusive to this cause of action and bars plaintiff from asserting the spoliation claim against the City and SBCL. Based on this finding, it is unnecessary to address plaintiff's other arguments. Accordingly, we affirm the trial court's entry of summary judgment on behalf of SBCL and the City.

Affirmed.

COHEN, P.J., and McNULTY, J., concur.