JOHN A. DOWRICK, Plaintiff-Appellee, v. THE VILLAGE OF DOWNERS GROVE *et al.*, Defendants-Appellants.

Second District    No. 2—05—0054

Opinion filed December 15, 2005.

John H. Kelly and Ericka J. Thomas, both of Ottosen, Trevarthen, Britz, Kelly & Cooper, Ltd., of Wheaton, for appellants.

Thomas W. Duda, of Law Offices of Thomas W. Duda, of Arlington Heights, for appellee.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, John Dowrick, brought an action in the circuit court of Du Page County against defendants, the Village of Downers Grove (Village), the Village's Board of Police and Fire Commissioners (Board of Commissioners) and its members, the Village's Firefighters Pension Fund, and the Village's fire chief, Phil Ruscetti. Count I of plaintiff's two-count complaint sought administrative review of a decision of the Board of Commissioners to discharge him from his employment as a firefighter and emergency medical technician with the Village's fire

department. Count II is not at issue in this appeal. The Board of Commissioners discharged plaintiff after finding that he was unable and unwilling to perform the duties of a firefighter. The trial court reversed the decision and ordered plaintiff reinstated with back pay. The trial court reasoned that a prior administrative decision of the Board of Trustees of the Village's Firefighters Pension Fund (Pension Board) denying disability benefits to plaintiff was *res judicata* and barred the Board of Commissioners from discharging plaintiff. Defendants appeal pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). We reverse.

The record establishes that in August 1998, plaintiff sustained neck and back injuries while assisting with an ambulance call. According to plaintiff, he then began to experience headaches and neck and back pain, as well as numbness and loss of grip strength in one hand. Plaintiff did not work for the rest of 1998. He returned to full-time work in 1999, but in April of that year he was assigned to a light-duty position. In December 1999, plaintiff filed a petition with the Pension Board, seeking a disability pension. A hearing on the petition was conducted in April 2000. Plaintiff was examined by three independent physicians selected by the Pension Board. Two of them concluded that plaintiff was unable to perform the duties of a firefighter, but the third concluded that there was "no medical reason why he cannot perform his full time full duty work without restriction." Based upon this evidence, other documentary medical evidence, and testimony at the hearing, the Pension Board found that plaintiff's physical and medical condition did not constitute a physical disability rendering him permanently disabled for service in the Downers Grove fire department. Accordingly, the Pension Board denied plaintiff's petition.

The Village, acting through Fire Chief Ruscetti, subsequently filed charges with the Board of Commissioners, seeking plaintiff's discharge. Testimony at the hearing on the charges establishes that in June 2000, plaintiff was sent to the firefighter's training academy in Elgin. Plaintiff complained of severe pain after performing one of the training exercises, and his training was discontinued. Plaintiff testified that the training "greatly aggravated" his condition. Plaintiff returned to full duty briefly in the summer of 2000. During that time, an incident occurred in which plaintiff experienced pain and loss of grip strength while carrying a stretcher, nearly causing him to drop it. After that incident, plaintiff was sent home sick and did not return to full duty as a firefighter. Instead, he was placed on administrative leave for several weeks and was later assigned to light duty, such as helping to organize fire prevention week and working on an accreditation project.

In October 2000, plaintiff and his attorney met with representatives of the Village and a union official to discuss plaintiff's ability to perform his duties. According to one of the Village representatives who attended, plaintiff indicated at the meeting that he did not feel that he could guarantee that he could perform the duties of a firefighter without putting his fellow firefighters, other citizens, or himself at risk.

Testimony and medical records from the Pension Board proceedings were also admitted into evidence in the hearing before the Board of Commissioners. The Board of Commissioners found that plaintiff "was unwilling and unfit to perform the job of a full-time firefighter." The Board of Commissioners concluded that this constituted cause for termination.

Plaintiff thereafter filed his complaint seeking, *inter alia*, administrative review of the Board of Commissioners' decision. The trial court reversed the decision on the basis that it was barred under principles of *res judicata* by the Pension Board's finding that plaintiff was not disabled. This appeal followed.

■ In an appeal from the judgment in an administrative review proceeding, the appellate court reviews the administrative agency's decision, not the trial court's. *Grever v. Board of Trustees of the Illinois Municipal Retirement Fund*, 353 Ill. App. 3d 263, 265 (2004). The standard of review applicable to an agency's decision depends on the type of question presented. An agency's findings of fact will be upheld unless against the manifest weight of the evidence, *i.e.*, unless the opposite conclusion is clearly evident. *Du Page County Airport Authority v. Department of Revenue*, 358 Ill. App. 3d 476, 482 (2005). On the other hand, an agency's rulings on questions of law are reviewed *de novo*. *Du Page County Airport Authority*, 358 Ill. App. 3d at 482.

Mixed questions of law and fact are reviewed under an intermediate standard. *Du Page County Airport Authority*, 358 Ill. App. 3d at 482. A mixed question exists where the historical facts are admitted or established, the rule of law is undisputed, and the only issue is whether the facts satisfy the settled statutory standard. *Du Page County Airport Authority*, 358 Ill. App. 3d at 482. The agency's decision will be upheld unless it is clearly erroneous—that is, unless the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Du Page County Airport Authority*, 358 Ill. App. 3d at 483.

■ The first issue before the court is whether the Board of Commissioners' decision was barred by the doctrine of *res judicata*. The question is one of law subject to *de novo* review. The doctrine of *res judicata* provides that a final judgment on the merits by a court of

competent jurisdiction is conclusive as to the rights of the parties and their privies, and as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 490 (1993). For *res judicata* to apply, the following elements must exist: (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits. *Cabrera v. First National Bank of Wheaton*, 324 Ill. App. 3d 85, 92 (2001).

■ While *res judicata* bars subsequent actions involving identical causes of action, the related doctrine of collateral estoppel prevents relitigation of issues decided in earlier proceedings. "The requirements for application of collateral estoppel are: (1) the issue decided in the prior adjudication is identical to that presented in the current action; (2) the party against whom the estoppel is asserted was a party to or in privity with a party to the prior adjudication; and (3) the prior adjudication resulted in a final judgment on the merits." *Bagnola v. SmithKline Beecham Clinical Laboratories*, 333 Ill. App. 3d 711, 723 (2002).

Defendants maintain that although the trial court couched its ruling in terms of *res judicata*, the real question—whether the parties could relitigate an *issue* decided in the earlier administrative proceeding—implicates collateral estoppel principles. They contend, however, that collateral estoppel does not apply, because the parties to the successive administrative proceedings were neither identical nor in privity. Plaintiff, on the other hand, contends that collateral estoppel is not the "appropriate theory" applicable to this case and that the trial court correctly held that *res judicata* applies. He contends that under the "transactional test" adopted in *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998), the two administrative proceedings involved the same cause of action. He further argues that the Board of Commissioners and the Pension Board are in privity. We note that neither party disputes that Pension Board's decision constitutes a "final judgment" on the merits for purposes of *res judicata* or collateral estoppel. Both doctrines apply to administrative decisions that are adjudicatory, judicial, or quasi-judicial. *Bagnola*, 333 Ill. App. 3d at 717.

■ We conclude that neither *res judicata* nor collateral estoppel applies in the present case. First, plaintiff's view that the proceedings before the Pension Board and those before the Board of Commissioners involved the same cause of action is dubious at best. "[P]ursuant to the transactional analysis, separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert dif-

ferent theories of relief." *River Park*, 184 Ill. 2d at 311. It is plaintiff's position that the claims in two administrative proceedings both essentially grew out of his injury. However, plaintiff fails to explain how the Village could have sought his discharge in the proceedings before the Pension Board, which were limited to consideration of his application for a disability benefit. *Res judicata* does not apply where the relief sought in the second proceeding was previously unavailable because of limitations on the subject matter jurisdiction of the court or other tribunal in the earlier proceeding. *Cabrera*, 324 Ill. App. 3d at 92. Moreover, plaintiff overlooks that a pure transactional analysis does not apply when, as in this case, the separate claims do not belong to the same party, but to *adverse* parties. In such circumstances, the defendant (or the party postured as such) might have a counterclaim in the first proceeding (although, as noted, it is not clear that such is the case here). However, Illinois follows the rule stated in section 22 of the Restatement (Second) of Judgments, that a defendant who may interpose a claim as a counterclaim, but fails to do so, is not thereby precluded from maintaining an action on that claim unless "[t]he relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action" (Restatement (Second) of Judgments § 22(2)(b), at 185 (1982)). See *Cabrera*, 324 Ill. App. 3d at 9. According to the Restatement, in such circumstances, "it is not sufficient that the counterclaim grow out of the same transaction or occurrence as the plaintiff's claim, nor is it sufficient that the facts constituting a defense also form the basis of the counterclaim." Restatement (Second) of Judgments § 22, Comment *f*, at 189 (1982). Leaving aside the question of whether it was even possible for the Village to have asserted a counterclaim or a defense in the Pension Board proceedings, it is clear that the Board of Commissioners' decision neither nullifies the Pension Board's decision nor impairs any rights established under it.

Plaintiff's reliance on the doctrine of *res judicata* is misplaced for another reason. "*Res judicata* should be applied only *** to facts and conditions as they existed at the time judgment was entered." *In re J'America B.*, 346 Ill. App. 3d 1034, 1042 (2004). According to the Restatement, "[m]aterial operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first." Restatement (Second) of Judgments § 24, Comment *f*, at 203 (1982). That plaintiff's physical condition was not a disability at the time of the Pension Board hearing does not mean that his condi-

tion did not later deteriorate and become disabling. Although plaintiff argues that the two proceedings were essentially based on the same evidence, in actuality the Board of Commissioners heard considerable evidence about plaintiff's condition and his ability to perform the duties of a fireman subsequent to the April 2000 Pension Board hearing. Notably, plaintiff attended the fire academy in June 2000. According to his own testimony, the training there "greatly aggravated" his injury. Also, in the summer of 2000, plaintiff nearly dropped a stretcher because of pain and loss of grip strength. Plaintiff later told Village officials that he could not guarantee that he could perform the duties of a firefighter without putting his fellow firefighters, other citizens, or himself at risk.

We also agree with defendants that the Board of Commissioners was not in privity with the Pension Board. Absent privity, the Board of Commissioners cannot be bound by the former adjudication of either claims (*res judicata*) or issues (collateral estoppel). Relying on *Garcia v. Village of Mount Prospect*, 360 F.3d 630 (7th Cir. 2004), plaintiff contends that the Pension Board and the Board of Commissioners both act as agents of the Village, and that the decision of one of those administrative bodies binds the other. However, even assuming, *arguendo*, that the Board of Commissioners can be considered an agent of the Village (see *McKinney v. City of East St. Louis*, 39 Ill. App. 2d 137, 139 (1963)), recent Illinois case law clearly holds that the Pension Board cannot.

Plaintiff's position might have prevailed under earlier case law. In *Dempsey v. City of Harrisburg*, 3 Ill. App. 3d 696 (1971), the plaintiff, the widow of a municipality's chief of police, applied for and was awarded worker's compensation benefits by the Industrial Commission based on its finding that her husband's death resulted from injuries arising out of and in the course of his employment. She also applied for a pension benefit on the basis that her husband died in the performance of his duty. The police pension fund denied the application. Although the municipality was a party to the proceedings before the Industrial Commission, the trustees of the pension fund were not, and they claimed that they could not be bound by the Industrial Commission's decision. The *Dempsey* court disagreed. The court concluded that the municipality was the real party in interest in both proceedings and that "[e]ven though the Board of Trustees of the Policemen's Pension Fund was not a party to the proceedings before the Illinois Industrial Commission, by the most logical interpretation of the statute creating the Board it is an agency of the city and is bound by a judgment rendered against the city." *Dempsey*, 3 Ill. App. 3d at 698.

However, more recent cases, including one from this court, have

taken the opposite view. In *Rhoads v. Board of Trustees of the City of Calumet City Policemen's Pension Fund*, 293 Ill. App. 3d 1070 (1997), the court held that a pension board was *not* in privity with the city whose pension benefits it administered. Accordingly, the *Rhoads* court held that the city's settlement of a police officer's worker's compensation claim did not bind the pension board and was not a bar to relitigating whether the officer's injury was caused by an act of duty. The *Rhoads* court rejected the notion that the city and the pension board were the same merely because they were both public entities. *Rhoads*, 293 Ill. App. 3d at 1075. The court further observed that "the lack of privity between the parties is supported by the distinct identity, constituency, and interest of the Pension Board." *Rhoads*, 293 Ill. App. 3d at 1075. This court has likewise indicated that a municipality's police pension fund was not in privity with the municipality itself. *Demski v. Mundelein Police Pension Board*, 358 Ill. App. 3d 499, 503 (2005).

As noted, plaintiff relies on *Garcia*, a federal court decision. In that case, a Mount Prospect police officer applied for a line-of-duty disability benefit, but was awarded a nonduty benefit. The officer filed a complaint for administrative review, and the circuit court affirmed the pension board's decision. The officer subsequently filed a lawsuit in federal court against the Village of Mount Prospect and others. He alleged that the denial of line-of-duty benefits was the result of unlawful discrimination based on race and national origin and was also in retaliation for certain testimony the officer had given in an unrelated matter. The United States Court of Appeals for the Seventh Circuit held that, under *res judicata* principles, the discrimination/retaliation claim was barred by the judgment affirming the pension board's decision. Citing *Rhoads*, the officer argued that because the village was not a party to the proceedings before the pension board, it could not invoke the defense of *res judicata*. The Seventh Circuit declined to follow *Rhoads*, finding that it was both "distinguishable *** and *** against the greater weight of authority." *Garcia*, 360 F.3d at 635.

The Seventh Circuit reasoned that the result in *Rhoads* was based on the perception that it would be unfair to preclude the pension board from relitigating the issue of causation because its interests were not properly represented in connection with the settlement of the worker's compensation claim. The Seventh Circuit found no such unfairness in *Garcia*:

> "Unlike *Rhoads*, where a plaintiff attempted to use collateral estoppel *offensively*, based upon a settlement agreement, to the detriment of a defendant *not* party to the original action, here it is the defendants who seek to invoke res judicata *defensively*, based

upon a final adjudication, against a plaintiff who *was* party to the original action. Our finding of privity between the Village and the Board *benefits* the Village, the party who was not literally present in the original litigation. And there is nothing to suggest that the Village would have made any arguments significantly different than those offered by the Board during the circuit court's consideration of Garcia's appeal. Furthermore, Garcia was himself a party in the original action, and we presume that his interests were vigorously advanced before the circuit court. Consequently, the fairness concerns underlying the *Rhoads* court's reasoning are not present here." (Emphasis in original.) *Garcia*, 360 F.3d at 636. In this regard, the present case is more like *Rhoads* than *Garcia*. Here, as in *Rhoads* (and in contrast to *Garcia*), a party to the prior proceedings is seeking to bind a nonparty in later proceedings. Thus, the fairness considerations that did not apply in *Garcia* are, nonetheless, applicable here.

*Garcia* also stated that the village had delegated responsibility for administering the police pension to the pension board in that the village created the board, appoints certain members, and is required to provide reserve capital through taxation. *Garcia*, 360 F.3d at 636. Accordingly, the court concluded that the board was in effect an agent of, and therefore in privity with, the village. This analysis is directly at odds with *Rhoads* and this court's decision in *Demski*. Opinions of lower federal courts are not binding on the appellate court (*Hendricks v. Victory Memorial Hospital*, 324 Ill. App. 3d 564, 567 (2001)), and, in our view, *Rhoads* and *Demski* represent the better analysis. Defendants correctly point out that, contrary to *Garcia*, the Pension Board is *not* created by the Village. Rather, it is created by statute. 40 ILCS 5/4—121 (West 2000). Although, pursuant to that statute, several municipal officials serve as members of the Pension Board, defendants also correctly note that the board members are fiduciaries, as that term is used in the Illinois Pension Code (see 40 ILCS 5/1—101.2 (West 2000)), and are therefore statutorily bound to "discharge [their] duties with respect to the *** pension fund solely in the interest of the participants and beneficiaries" (40 ILCS 5/1—109 (West 2000)). In that capacity, they do not represent the general interests of the Village and cannot be considered the Village's agents. Indeed, the Village's interest in ensuring the fitness of its firefighters may often diverge from the interests of the participants and beneficiaries of a pension fund in ensuring that funds are not depleted by dubious claims. The board members cannot act solely in the interests of the fund's participants and beneficiaries if they are also charged with ensuring the safety and welfare of the general public.

We acknowledge that, at first blush, it seems incongruous that separate administrative findings could lead to a firefighter being discharged because of a disability while also being denied a disability pension. However, comparison of the statutes respectively governing proceedings before the Board of Commissioners and those before the Pension Board suggests a possible rationale for such a result. Whereas the Illinois Municipal Code (65 ILCS 5/1—1—1 *et seq.* (West 2002))—which governs employment of firefighters—does not specify the manner in which a municipality must prove cause for discharge (see 65 ILCS 5/10—2.1—17 (West 2002)), the requirements for obtaining a firefighter's disability pension are more specific and stringent. "A disability pension shall not be paid unless three physicians selected by the Board have determined by examinations that the firefighter is disabled, together with such other evidence the Board deems necessary." *Graves v. Pontiac Firefighters' Pension Board*, 281 Ill. App. 3d 508, 510 (1996), citing 40 ILCS 5/4—112 (West 1992).[1] Given the compelling public interest in ensuring the fitness of firefighters to perform their duties, it is reasonable to conclude that the General Assembly deliberately set the bar lower for a municipality seeking to discharge an unfit firefighter than for a firefighter to obtain a disability pension, and committed the decisions to separate agencies with different missions.

Having concluded that the Pension Board's decision did not bar the Board of Commissioners from discharging plaintiff, we next consider whether the Board of Commissioners' decision was supported by the record. "Cause" for termination is defined as a substantial shortcoming recognized by law and public opinion as a good reason for termination. *Dauen v. Board of Fire & Police Commissioners*, 275 Ill. App. 3d 487, 492 (1995). Here, the Board of Commissioners found that plaintiff was unwilling and unable to perform the duties of a firefighter. The finding is one of fact and therefore will not be disturbed unless against the manifest weight of the evidence. *Du Page County Airport Authority*, 358 Ill. App. 3d at 482. To the contrary, the record contains ample evidence supporting this finding. Plaintiff points to evidence that his performance evaluations since the accident have been highly positive. However, these reviews pertain to his performance in light-duty assignments and do not undermine the Board of Commissioner's finding that plaintiff was unwilling and unable to

---

[1]A panel of the First District Appellate Court has found section 3—115 of the Pension Code (40 ILCS 5/3—115 (West 2002)), which establishes an identical procedure for police pensions, unconstitutional as applied. *Marconi v. Chicago Heights Police Pension Board*, 361 Ill. App. 3d 1 (2005).

perform the ordinary duties of a firefighter. Plaintiff also contends that there is no evidence that he ever disobeyed an order. Along the same lines, we note that the trial court emphasized that plaintiff "was never assigned something which he was incapable or unwilling to do." When counsel for defendants pointed to evidence that because of his condition, plaintiff almost dropped a person he was carrying by stretcher, the trial court responded, "Almost only counts in horseshoes, I believe is the saying." We do not believe that, in order to discharge an unfit firefighter, a municipality must order the firefighter to do something he or she claims to be unable to do. Nor do we believe that public policy can countenance a rule that a municipality must wait until a firefighter's unfitness has resulted in injury (and perhaps even a tragedy) before addressing the danger posed by the firefighter's continued service. The Board of Commissioners' decision is not against the manifest weight of the evidence.

Finally, as an alternative rationale for affirming the trial court's decision, plaintiff contends that the Village's delay in bringing charges against him violated his right to due process of law by depriving him of the ability to obtain simultaneous judicial review of the decisions of the Pension Board and the Board of Commissioners. Plaintiff cites no pertinent authority in support of the argument and it is therefore waived. In any event, the timing of judicial review is irrelevant. The circuit court would still be obliged to review the administrative decisions independently and affirm them if they were supported by the law and the evidence, irrespective of whether they were consistent with one another.

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed.

Reversed.

BYRNE and GILLERAN JOHNSON, JJ., concur.