No. 2--04--0960                                   filed: 7/11/06
_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

_____

| | | |
|---|---|---|
| THE VILLAGE OF WILLOWBROOK, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee and | ) | |
| Cross-Appellant, | ) | |
| | ) | |
| v. | ) | No. 03--MR--1429 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE | ) | |
| ILLINOIS MUNICIPAL RETIREMENT | ) | |
| FUND and LOUIS KOSIBA, in his Official | ) | |
| Capacity as the Executive Director of the | ) | |
| Illinois Municipal Retirement Fund, | ) | |
| | ) | Honorable |
| Defendants-Appellants and | ) | Edward R. Duncan, Jr., |
| Cross-Appellees. | ) | Judge, Presiding. |

_____

_____

JUSTICE McLAREN delivered the opinion of the court:

Defendants, the Board of Trustees of the Illinois Municipal Retirement Fund and

Louis Kosiba, in his official capacity as Executive Director of the Illinois Municipal

Retirement Fund (collectively, IMRF), appeal from the judgment of the trial court remanding

the cause to IMRF for further proceedings. Plaintiff, the Village of Willowbrook, cross-

appeals from the same judgment. We reverse and remand the cause for further

proceedings.

This action arises from the retirement of Raymond E. Arthurs, Jr., as chief of police for the Village of Willowbrook on January 30, 2000. Arthurs had served as a police officer in Palos Heights from 1971 to 1990. During that time, he participated in the Palos Heights police pension fund. In March 1990, he became the Willowbrook chief of police and joined the Willowbrook police pension fund. In 1991, Arthurs switched his participation to the IMRF Sheriff's Law Enforcement Employee Plan (SLEP). At that time, he requested a transfer of all his pension credits from the Palos Heights and Willowbrook pension funds into the IMRF fund. The Palos Heights fund transferred 18 years and 9 months of pension credit along with $89,608.38. The Willowbrook fund transferred one year and five months of credit and $13,601.22. This total of $103,209.60 was $11,786.32 more than the $91,423.28 that IMRF required to be transferred; according to IMRF, the overage was "retained by IMRF and credited to the Village of Willowbrook and the member's SLEP reserves."

Arthurs began receiving his IMRF pension in February 2000. In June 2001, IMRF informed Willowbrook that the Willowbrook SLEP plan had "negative assets of $306,453" and that Willowbrook would be required to make a "minimum monthly contribution" of $2,464.75. These minimum payments were to continue "until the obligation is paid off or until new members enroll in the SLEP plan and the calculated monthly employer contribution *** exceeds the minimum contribution amount." Willowbrook appealed the IMRF administrative staff decision to the IMRF Board of Trustees Benefit Review Committee, which recommended that the full IMRF Board confirm the calculation of the additional amount due. After the IMRF Board approved the recommendation, Willowbrook filed a complaint for administrative review. The trial court affirmed in part and reversed in

part, finding that IMRF was correct in using a "state-wide" average contribution rate to calculate the contributions required to be transferred to the SLEP plan but in error in not adding interest for the periods transferred. The trial court then remanded the cause to IMRF for recalculation of the necessary payment to IMRF, again using "state-wide averages" but now adding interest for each year transferred. The court retained jurisdiction "until the final numbers are calculated." IMRF recalculated and determined that the charge to Willowbrook would have been lowered by $78,322.89, to $678,592.43. Although the recalculation was presented to the IMRF Board, the Board "decided to reaffirm their [sic] initial decision." Willowbrook moved the court to enter a final and appealable order, which the court did by declaring its June 14, 2004, ruling to be final and appealable. IMRF then appealed, and Willowbrook cross-appealed.

IMRF first contends that the trial court erred in its interpretation of section 7--139(a)(9) of the Illinois Pension Code (Code) (40 ILCS 5/7--139(a)(9) (West 2004)). However, in an appeal from the judgment in an administrative review proceeding, we review the administrative agency's decision, not that of the trial court. Dowrick v. Village of Downers Grove, 362 Ill. App. 3d 512, 515 (2005). We will uphold an agency's findings of fact unless they are against the manifest weight of the evidence, while we review de novo an agency's rulings on questions of law. Dowrick, 362 Ill. App. 3d at 515. Mixed questions of law and fact, where historical facts are established, the rule of law is undisputed, and the only issue is whether the facts satisfy the settled statutory standard, will be reviewed under the clearly-erroneous standard--that is, the decision will be upheld unless we are left with a definite and firm conviction that a mistake has been committed. Dowrick, 362 Ill. App. 3d at 515.

In this case, the parties do not dispute the facts regarding Arthurs' time of service or the amounts actually transferred from the pension funds to the SLEP plan. At issue is the application of Section 7--139(a)(9) of the Code, which provides for the transfer of service from other retirement systems and requires in part:

"[P]ayment by the member of the amount by which (1) the employer and employee contributions that would have been required if he had participated in this Fund as a sheriff's law enforcement employee during the period for which credit is being transferred, plus interest thereon at the effective rate for each year, compounded annually, from the date of termination of the service for which credit is being transferred to the date of payment, exceeds (2) the amount actually transferred to the Fund." (Emphasis added.) 40 ILCS 5/7--139(a)(9) (West 2004).

The primary objective in statutory interpretation is to give effect to the legislature's intent. Harshman v. DePhillips, 218 Ill. 2d 482, 493 (2006). The best indication of legislative intent is the statute's language, given its plain and ordinary meaning. Harshman, 218 Ill. 2d at 493. We must look at the statute as a whole, considering all relevant parts. Harshman, 218 Ill. 2d at 493. Where the statute's language is clear and unambiguous, it will be given effect without resorting to other aids of construction. Harshman, 218 Ill. 2d at 493. However, a statute should also be construed in conjunction with other statutes that address the same subject. People v. Grever, Nos. 99930, 99945 cons., slip op. at 10 (June 2, 2006).

IMRF argues that the Code requires the inclusion of interest in the calculation only "from the date of termination of the service for which credit is being transferred to the date of payment," in the words of section 7--139(a)(9). Thus, since the date of termination of

service and the date of payment were in the same year, no interest should have been included in the calculation.

We agree. The plain words of the legislature do not require the inclusion of interest calculated for each year that the member paid into his prior retirement plan. There is simply no requirement that interest be paid for the period that the member participated in the municipal pension fund. Interest <u>may</u> be required, depending on the facts and circumstances of the individual transfer to the IMRF plan. For example, there was a period of just over one year between Arthurs' termination of service in the Palos Heights pension plan and the transfer of his credit and funds to the IMRF SLEP plan. It would appear that a calculation of interest would have been appropriate in that instance. However, where, as here, the date of termination of service and the date of payment are in the same year, no interest is required. To require the calculation of interest in this instance, as Willowbrook contends and the trial court ordered, would require one to read an additional clause into the statute, which we will not do.

Our conclusion is further bolstered by the statutory provisions under which Arthurs transferred into the IMRF SLEP plan. Section 3--109.1 of the Code (40 ILCS 5/3--109.1 (West 2004)) allows chiefs of police to transfer their participation from municipal police pension funds to the IMRF fund. Section 3--110.3(a) (40 ILCS 5/3--110.3(a) (West 2004)) then provides that creditable service shall be transferred upon payment from the police pension fund to the IMRF fund of:

"(1) [T]he amounts accumulated to the credit of the applicant on the books of the fund on the date of transfer; and

(2) employer contributions in an amount equal to the amount determined under paragraph (1); and

(3) any interest paid by the applicant in order to reinstate service."

Again, there is no requirement that interest be transferred for the period that the member participated in the municipal retirement fund. The only interest provided for in this statute is the interest that a member may have paid into the fund to reinstate service.

Prior to July 1, 1988 (at a time when only county sheriffs, not chiefs of police, were allowed to transfer service from police pension funds to the IMRF fund), such transfers required an amount equal to:

"(1) [T]he amounts accumulated to the credit of the applicant, <u>including interest</u>, on the books of the fund on the date of transfer; and

(2) employer contributions in an amount equal to the amount determined under subparagraph (1)." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 108½, par. 3--110.3(a).

However, Public Act 85--941 (Pub. Act 85--941, eff. July 1, 1988), section 1, amended the Code on July 1, 1988, deleting the phrase "including interest" from subparagraph (1) and adding the following language:

"(B) Until July 1, 1989, any such county sheriff may reinstate service which was terminated by receipt of a refund, by payment to the police pension fund of the amount of the refund with interest thereon at the rate of 6% per year, compounded annually, from the date of refund to the date of payment." Ill. Rev. Stat. 1987, ch. 108½, par. 3--110.3.

At all times, however, both prior to and after the amendment in July 1988, section 7--139(a)(9) required the calculation of interest "from the date of termination of the service for which credit is being transferred to the date of payment." Ill. Rev. Stat. 1987, ch. 108½, par. 7--139(a)(9) (text of paragraph effective until July 1, 1988, and text effective July 1, 1988).

Thus, the legislature clearly differentiated between the accumulated interest in the municipal pension funds and the interest to be calculated for the period between the termination of service and the date of payment to the IMRF fund. Furthermore, the legislature explicitly amended the statute to remove any reference to the accumulated interest in the account. There can be no doubt but that the interest calculation that survives to this day is not the same as the accumulated interest in the account.

Willowbrook cites approvingly the trial court's statement that, "From an actuarial standpoint, interest is mathematically required and failure to include interest will produce unfunded liabilities." While this may be an actuarial truism, the legislature is not an actuary, and legislative action is not bound by the actuarial tables. We cannot agree with Willowbrook's argument that the statute "does not work" under IMRF's interpretation. If it did not work, the legislature would have "fixed" it long ago. While the statute may not work in Willowbrook's favor, it is clear that the legislature chose to exclude the accumulated interest from the transfer to the IMRF plan. Therefore, we must reverse the trial court's judgment remanding the cause to IMRF for a calculation of interest.

Willowbrook contends in its cross-appeal that the trial court erred in affirming IMRF's use of an average employer SLEP contribution rate, instead of a separate municipal contribution rate, when calculating the contributions necessary for Arthurs' transfer to the

SLEP plan.  Section 7--139(a)(9) of the Code requires calculation of "the employer and employee contributions that would have been required if [the member] had participated in this Fund as a sheriff's law enforcement employee during the period for which credit is being transferred."  40 ILCS 5/7--139(a)(9) (West 2004).  The trial court concluded that use of a separate contribution rate for each municipality would make that calculation "quite difficult, if not actually impossible."

Section 7--172 of the Code provides in relevant part:

"(b) A separate municipality contribution rate shall be determined for each calendar year for all participating municipalities together with all instrumentalities thereof.  The municipality contribution rate shall be determined for participating instrumentalities as if they were participating municipalities.  ***

* * *

(c) A separate municipality contribution rate shall be computed for each participating municipality or participating instrumentality for its sheriff's law enforcement employees."  (40 ILCS 5/7--172(b), (c) (West 2004).

Subsection (b) also provides a detailed list of percentages that are to be the basis of the municipality contribution rate.  See 40 ILCS 5/7--172(b) (West 2004).

The legislature has clearly directed that such separate municipality contribution rates are to be calculated.  Both Willowbrook and IMRF stipulated before the IMRF Board of Trustees Benefit Review Committee that:

"27. The Illinois Pension Code requires IMRF to determine a separate municipality contribution rate for the SLEP employees of each participating

municipality for each calendar year.  40 ILCS 5/7--172; IMRF Manual For Authorized Agents, Secs. 7.00, 7.20."

Whether the calculation is difficult or not, the legislature has required it, and the parties have stipulated that it must be done.  IMRF has presented no cogent argument as to why the Code does not apply in this case or why its own stipulation should be disregarded. Therefore, we conclude that the trial court erred in affirming IMRF's use of a state-wide average contribution rate instead of a separate municipality contribution rate, and the cause must be remanded for a calculation using a proper municipal contribution rate.

For these reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded to IMRF for further proceedings consistent with this opinion.

Reversed and remanded

HUTCHINSON and BYRNE, JJ., concur.