Nos. 1-05-2422 & 1-05-2548  Consolidated


| | | |
|---|---|---|
| ILLINOIS HEALTH MAINTENANCE ORGANIZATION GUARANTY ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee and Cross-Appellant, | ) ) | |
| v. | ) ) ) | Nos. 04 CH 00405, 04-CH-05539 and 04-CH-03730 |
| THE DEPARTMENT OF INSURANCE, DEIRDRE K. MANNA, Acting Director of the Department of Insurance, and GLENN R. GASIOREK, | ) ) ) ) | (consolidated) |
| Defendants | ) ) | |
| (University of Chicago Hospitals and University of Chicago Practice Plan, Defendants-Appellants and Cross-Appellees). | ) ) ) ) | Honorable Nancy J. Arnold, Judge Presiding. |

_____

| | | |
|---|---|---|
| UNIVERSITY OF CHICAGO HOSPITALS and UNIVERSITY OF CHICAGO PRACTICE PLAN, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | Nos. 04 CH 00405, 04-CH-05539 and 04-CH-03730 |
| DEIRDRE K. MANNA, Acting Director of the Department of Insurance, | ) ) ) | (consolidated) |
| Defendant | ) ) | |
| (Illinois Health Maintenance Organization Guaranty Association, Defendant-Appellee). | ) ) ) | Honorable Nancy J. Arnold, Judge Presiding. |


JUSTICE ROBERT E. GORDON delivered the opinion of the court:

The central issue in these appeals is whether the Illinois Health Maintenance

Organization Guaranty Association (Association) is liable to the University of Chicago Hospitals

(Hospitals) and the University of Chicago Practice Plan (Practice Plan) (collectively, Providers)

for unpaid claims for services rendered to enrollees of a health maintenance organization (HMO) which was declared insolvent. The Association was created by section 6-6 of the Illinois Health Maintenance Organization Guaranty Association Law (Act) (215 ILCS 125/6-6 (West 2004)) for the express purpose of protecting HMO enrollees "and their beneficiaries, payees and assignees, subject to certain limitations" (215 ILCS 125/6-2 (West 2004)), against the insolvency of an HMO.

In August 2001, the Providers submitted unpaid claims totaling more than $6 million to the Association for services rendered to enrollees of American Health Care Providers, Inc. (AHCP), an HMO which had been declared insolvent. Early the next year (2002), the Association denied most of the Providers' claims. The bulk of the claims were denied on the ground that the Providers were not entitled to recover under the Act for services provided to Medicaid enrollees (Medicaid defense). Most of the Providers' claims were for services rendered to AHCP enrollees who were Medicaid patients. The Providers appealed the denial of their claims to the Illinois Director of Insurance (Director). 215 ILCS 125/6-11(3) (West 2004).[1] Subsequently, the parties filed motions for summary disposition. On December 5, 2003, the Director issued an order rejecting, among other things, the Association's Medicaid defense, and

_____

[1]Section 6-6 of the Act provides that the Association "shall be supervised by the Director and is subject to this Act and the applicable provisions of the Illinois Insurance Code." 215 ILCS 125/6-6 (West 2004).

directing the Association to pay $5,084,922.19 to the Hospitals and $292,229.62 to the Practice

Plan.

The Association and the Providers filed complaints for administrative review with the

circuit court of cook county, chancery division. The Association sought the reversal of those

portions of the Director's order that were adverse to the Association, particularly the rejection of

the Medicaid defense, while the Providers challenged that part of the order declining to award

prejudgment and postjudgment interest. In May 2005, the circuit court reversed the Director's

rejection of the Association's Medicaid defense. In so doing, the court upheld the denial of most

of the claims the Association had rejected. The circuit court also affirmed the Director's denial

of prejudgment and postjudgment interest.

In August 2005, the Association and the Providers filed notices of appeal. The Providers

argue on appeal that the circuit court erred in (1) reversing the Director's rejection of the

Association's Medicaid defense, and (2) failing to award prejudgment and postjudgment interest.

In its cross-appeal, the Association contends, among other things, that the circuit court erred in

upholding the Director's rejection of certain additional defenses asserted by the Association. By

order dated October 18, 2005, the parties' appeals were consolidated. For the reasons set forth

below, we affirm in part and reverse in part the judgment of the circuit court.

BACKGROUND

On May 11, 2000, the circuit court entered an order of liquidation with a finding of

insolvency against AHCP. Prior to this liquidation, the (University of Chicago) Hospitals and

the Practice Plan, a group of physicians who were employees and faculty members of the

University of Chicago, had provided various medical services to AHCP enrollees for which the

Providers had

not been paid. Most of these services were rendered on an emergency basis.[2] For the period at

issue, the Providers had no agreement with AHCP to supply medical services to its enrollees.

On August 3, 2001, subsequent to AHCP's liquidation, the Providers submitted unpaid

claims totaling more than $6 million to the Association. This total included $5,609,609.72 for

the Hospitals and $415,620.93 for the Practice Plan. The majority of the Providers' claims were

for services provided to AHCP enrollees who were Medicaid recipients.

In early 2002, the Association notified the Providers that it was denying most of their

claims. Some $5.2 million ($5,013,329.53 for the Hospitals and $209,192.35 for the Practice

Plan) of the Providers' $6.025 million in claims were denied on the ground that the Providers

were not entitled to recover under the Act for services provided to Medicaid enrollees. The

Association also denied any claims that it concluded were (1) the responsibility of other medical

groups under contract with AHCP (referral defense), (2) for services provided to enrollees who

did not reside in Illinois or Wisconsin on the date of the liquidation (residency defense), and (3)

for charges incurred either before the effective date of coverage or after the termination date of

coverage for a particular AHCP enrollee (nonenrollment defense). In a letter dated February 21,

2002 (and a supplemental letter dated March 12, 2002), the Providers appealed the Association's

---

[2]Under federal law, hospitals with emergency departments are required to provide

medically necessary services when requested. 42 U.S.C. §1395dd (2000).

4

denial of their claims to the Director. 215 ILCS 125/6-11(3) (West 2004). In May 2002, the Director designated an employee of the Department of Insurance as hearing officer in the case.

In August 2002 (prior to the hearing), the Association filed a motion for leave to take discovery. About a month later (September 23, 2002), the hearing officer issued an order granting some of the Association's discovery requests but denying most of them. The hearing officer declined to allow any discovery regarding possible additional defenses, explaining that the hearing would be limited to those defenses originally cited by the Association in denying the Providers' claims.

The parties filed motions for summary disposition. In its motions, the Association sought, among other things, a decision affirming its Medicaid, referral, residency and nonenrollment defenses. The Association also filed an alternative motion for summary disposition arguing that, if the Association's denial of the Hospitals' claims were reversed, these claims should be paid at a rate lower than the Hospitals' usual and customary rate. According to the Association, the Hospitals' claims should be paid "at the rates payable by the Illinois Department of Public Aid [(IDPA)] for those same services" (rate-of-payment defense). The Providers' motion for summary disposition requested a decision in Providers' favor and an order directing the Association to pay the full amount of the claims. In their memorandum in support of their motion for summary disposition, the Providers argued, among other things, that the Association was barred by collateral estoppel from asserting its Medicaid, referral, and rate-of-payment defenses. According to the Providers, these same defenses were rejected by the Director in an earlier proceeding to which the Association was a party. The Providers stated: "[T]he

Director is bound by his prior Order on these identical issues and the Association is collaterally estopped from challenging it." (In the prior proceeding (*Shapo*), the Director found the Association liable to a number of health care providers, including the Hospitals, "for services rendered by them to enrollees of an insolvent health maintenance organization (HMO) known as MedCare HMO, Inc. (MedCare)." *Illinois Health Maintenance Organization Guaranty Ass'n v. Shapo*, 357 Ill. App. 3d 122, 126 (2005).) In the case at bar, the Providers and the Association agreed that the hearing would consist of their summary disposition submissions.

In August 2003, the hearing officer issued his findings of fact, conclusions of law and recommendations. The hearing officer rejected the Association's Medicaid, referral, and rate-of-payment defenses and denied the Association's motions for summary disposition on these issues. In rejecting the Medicaid defense, the hearing officer noted that the Providers "at no time *** purposefully submit[ted] their claims to the Medicaid agency (IDPA) seeking reimbursement for those services [provided to Medicaid patients who were AHCP enrollees]." The hearing officer concluded that, with regard to the Medicaid claims at issue, the Providers "were not participating in the Medicaid program" and the Medicaid defense therefore did not apply to the Providers. The hearing officer came to a different conclusion regarding the Association's residency and nonenrollee defenses. The hearing officer granted the Association's motions for summary disposition on these latter two defenses, finding that the Association's denials of claims on those grounds were proper. On December 5, 2003, the Director issued an order approving and confirming the hearing officer's findings, conclusions and recommendations. In accordance with

those recommendations, the Director ordered the Association to pay $5,084,922.19 to the

Hospitals and $292,229.62 to the Practice Plan.

In their motion for partial reconsideration, the Providers noted that the Director made no

provision in his order for prejudgment or postjudgment interest. They asked that the Director

award $649,739.18 in prejudgment interest, and that he "expressly mandate that the Association

shall be liable for any post-judgment interest as it may accrue." On January 29, 2004, the

Director denied the Providers' motion, explaining that he could find "no statutory authority for

the Director to assess prejudgment or post-judgment interest."

The Association also moved for partial reconsideration of the Director's order, focusing

in particular on the Director's rejection of the Medicaid and other defenses, and his order

directing the Association to pay the Providers more than $5 million in reimbursement. The

Association asked the Director to "reconsider and reverse the Hearing Officer's [September 23,

2002] Discovery Order" in which the hearing officer denied most of the Association's discovery

requests. On February 25, 2004, the Director denied the Association's motion for partial

reconsideration.

The parties filed complaints for administrative review in the chancery division of the

circuit court of cook county. In their complaints for administrative review, the parties made

essentially the same requests of the circuit court that they made of the Director in their motions

for reconsideration. The Association sought reversal of any holdings in the Director's order of

December 5, 2003, that were adverse to the Association, as well as reversal of the hearing

officer's September 23, 2002, order (discovery order) denying most of the Association's

discovery requests. The Association also sought review of the Director's February 25, 2004, order denying the Association's motion for reconsideration. For their part, the Providers asked the circuit court to reverse those portions of the Director's December 5, 2003, and January 29, 2004 (denial of reconsideration), orders that denied the Providers' claims for prejudgment and post-judgment interest.

On May 6, 2005, the circuit court reversed the Director's rejection of the Association's Medicaid defense. This reversal had the effect of upholding the Association's denial of a large portion of the Providers' claims. The circuit court also rejected the Providers' argument that the Association was barred by collateral estoppel from asserting the Medicaid defense in the case at bar. This collateral estoppel argument was based on *Illinois Health Maintenance Organization Guaranty Ass'n v. Shapo*, 357 Ill. App. 3d 122 (2005), "which affirmed a decision by the Director in a [previous] case" involving the Association and the Hospitals, in which the Director rejected the Association's Medicaid defense. The circuit court found "no collateral estoppel effect here." In a subsequent order (July 6, 2005), the circuit court affirmed the Director's rejection of the Association's referral and rate-of-payment defenses. The court also affirmed the denial of the Providers' request for prejudgment and postjudgment interest. While this order did not address the Director's denial of the Association's discovery requests, the circuit court confirmed in a later order (July 18, 2005) that any decisions of the Director that had not been reversed in the court's previous orders were affirmed. The parties appealed to this court, and their appeals were consolidated.

ANALYSIS

8

The Providers argue on appeal that the Director correctly rejected the Association's Medicaid defense, and the circuit court erred in reversing that decision. The Providers also argue that the circuit court erred in affirming the Director's denial of prejudgment and postjudgment interest. In its cross-appeal, the Association contends, as it did below, that the Director erred in rejecting the Association's Medicaid, referral, and rate-of-payment defenses, and in denying the Association's discovery requests.

On appeals from administrative review proceedings, this court reviews the decision of the administrative agency, not of the circuit court. *Dow Chemical Co. v. Department of Revenue*, 359 Ill. App. 3d 1, 20 (2005); *Siwek v. Retirement Board of the Policeman's Annuity & Benefit Fund*, 324 Ill. App. 3d 820, 824 (2001).

Initially, we address two other, potentially dispositive arguments raised by the Providers: (1) the Association failed to exhaust its administrative remedies before filing its complaint for administrative review, and the circuit court therefore lacked jurisdiction to consider the complaint (*Castaneda v. Human Rights Comm'n*, 132 Ill. 2d 304, 308 (1989)), and (2) the Association's Medicaid, referral and rate-of-payment defenses are barred by the doctrine of collateral estoppel. These issues present questions of law subject to *de novo* review.[3] *Arvia v.*

---

[3]In its reply brief, the Association argues that the proper standard of review for the application of collateral estoppel is abuse of discretion. The Association points to *Herzog v. Lexington Township*, 167 Ill. 2d 288, 296 (1995), which states that, where "nonmutual offensive collateral estoppel" is applied, courts must have broad discretion to ensure that there is no

*Madigan*, 209 Ill. 2d 520, 525-26 (2004); see *People v. Luedemann*, 357 Ill. App. 3d 411, 426 (2005), *reversed on other grounds*, 222 Ill. 2d 530 (2006).

Exhaustion of Administrative Remedies

In *Illinois Health Maintenance Organization Guaranty Ass'n v. Shapo*, 357 Ill. App. 3d 122 (2005), the Director found the Association liable to a number of health care providers for services rendered to a different HMO, MedCare HMO, which had also been declared insolvent. The circuit court in *Shapo* dismissed the Association's complaints for administrative review because the Association failed to request a rehearing of the Director's orders prior to filing the complaints, and thus failed to exhaust its administrative remedies. *Shapo*, 357 Ill. App. 3d at 126. The appellate court in *Shapo* affirmed the trial court's dismissal of the Association's administrative-review complaints for failure to exhaust administrative remedies. In the case at

---

unfairness to the defendant. (This statement appears to be the basis for the Association's claim that the application of collateral estoppel is within the discretion of the trial court.) According to *Herzog*, "[n]onmutual offensive collateral estoppel occurs where a plaintiff *who was not a party to the prior proceeding* seeks to prevent a defendant from relitigating an issue previously decided [against the defendant]." (Emphasis added.) *Herzog*, 167 Ill. 2d at 295. Here, by contrast, the main plaintiff (the Hospitals) *was* a party to the prior administrative proceeding (in *Shapo*). As is explained in more detail later in this opinion, the collateral estoppel being sought in this case therefore is *mutual* rather than *non*mutual. Accordingly, the abuse-of-direction standard of review does not apply in this instance.

bar, the Providers argue that the Association's motion for partial reconsideration of the Director's order (in the instant case) was untimely filed, and the Association therefore failed to exhaust its administrative remedies before filing its complaint for administrative review, just as the Association did in *Shapo*.

Under Department of Insurance (Department) procedures for administrative hearings, "[a] motion for a rehearing or a motion for the reopening of a hearing shall be filed within 10 days of the date of mailing of the Director's Order." 50 Ill. Adm. Code §2402.280(c) (1973). According to the record in the case at bar, the Department mailed the Director's order of December 5, 2003, to the Association's counsel on December 9, 2003. At that point, under normal circumstances, the Association would have had (pursuant to section 2402.280(c)) until December 19 to file its motion for reconsideration. However, the order was mailed to the wrong address. The envelope containing the order was returned to the Department in "late December" stamped "addressee unknown." On December 30, the Department contacted the Association's counsel and, at counsel's request, faxed the order to counsel's office. The next day, December 31, the Department once again mailed the Director's order to the Association's counsel, this time at the correct address. Nine days later, on Friday, January 9, 2004, the Association's counsel mailed the Association's motion for partial reconsideration to the Department in Springfield. The motion was received by the Department on Monday, January 12.

The Providers contend that the Association's motion for partial reconsideration was not filed within the 10 days required under section 2402.280(c), and it therefore was untimely. In support of this contention, the Providers argue, first, that the Association's motion should have

been filed within 10 days of the Department's *original* mailing of the Director's order on December 9, 2003. Even though the order sent on December 9 was mailed to the wrong address, the Providers insist that the confusion was the fault of the Association and not the Department. The Providers correctly note that documents filed by the Association's counsel at various times during the administrative proceedings listed three different addresses for counsel's office.

The apparent reason for the three different addresses was that, during the course of the proceedings, counsel for the Association occupied three different offices as a result of a merger. Counsel's ultimate address, one of the three that were submitted to the Department during the proceedings, was 321 North Clark Street, Suite 2800, Chicago. At the time of the December 9, mailing by the Department, provision had been made for mail delivered to the other two addresses to be forwarded to the 321 North Clark Street address. However, the order sent by the Department on December 9 was mailed to a *fourth* address, not one of the three that had been submitted to the Department. According to counsel for the Association, this was an address that was "never occupied by the Association's counsel." In view of these circumstances, we reject the Providers' contention that the incorrect mailing on December 9, and the resultant failure of the Association's counsel to receive the Director's order in a timely fashion, are the fault of counsel for the Association and not the Department. Our conclusion in this regard is bolstered by the fact that, as the Department conceded, it mailed the order to the Association's counsel but not to the Association itself. Under the Department's procedures for administrative hearings, copies of the Director's order are to be mailed to "*each party and* to his attorney of record." (Emphasis added.) 50 Ill. Adm. Code §2402.270(c) (1973).

The Providers next argue that even if the 10-day period for filing the motion for reconsideration did not run from the (December 9, 2003) date the Department originally placed the Director's order in the mail, this period should at least have run from December 30, 2003, the date counsel for the Association received the Director's order by fax from the Department. Under this view, the Association would have had until January 9, 2004, to file its motion. This is the date that the Association's counsel mailed the motion to the Department. However, the Providers argue further that mailing is not the same as filing and that, because the Department did not receive the motion until January 12, 2004, it was not filed until then, which was more than 10 days after December 30, 2003.

Section 2402.280(c) states the time within which a motion for reconsideration must be filed, but it does not define the term "filed." There is nothing in this section to indicate that mailing is not the same as filing. Moreover, another section of these same administrative hearing procedures suggests that mailing and filing are equivalent. Section 2402.40 states, in pertinent part: "Documents and requests permitted or required to be filed with the Department in connection with a hearing shall be addressed to and *mailed to or filed with* the Department of Insurance, Springfield, Illinois 62767, in duplicate." (Emphasis added.) 50 Ill. Adm. Code §2402.40 (1973).

We need not decide this mailing-filing question, however. In view of section 280(c)'s clear statement that the 10-day filing period runs from "the date of *mailing* of the Director's order" (emphasis added) (50 Ill. Adm. Code §2402.280(c) (1973), we conclude that, in the case

at bar, the filing period ran, not from the date of the Department's fax, but rather from the December 31 date that the Department mailed the order to counsel's correct address. Under this interpretation, the Association had until Saturday, January 10, 2004, to file its motion for reconsideration. Because the final day of this 10-day period occurred on a Saturday, the filing period ran until the end of the "next following business day" (50 Ill. Adm. Code §2402.60(a)(1973)), which, in this case, was Monday January 12. As noted, this was the date that the Department received the Association's motion. The Providers do not dispute that the Association's motion was filed on January 12.

We reject the Providers' contention that the Association's motion for partial reconsideration was untimely filed and that the Association therefore failed to exhaust its administrative remedies. We find that the circuit court had jurisdiction over the Association's complaint for administrative review. There was no need to dismiss the complaint on this ground.

## Collateral Estoppel

The Providers also argue that the Association's Medicaid, referral, and rate-of-payment defenses are barred by the doctrine of collateral estoppel. These same three defenses were raised by the Association in *Shapo*, an earlier case in which, as noted, the Association was found liable to a number of health care providers for services rendered to a different HMO, MedCare HMO. In the administrative proceeding in *Shapo*, the Director rejected the Association's Medicaid, referral, and rate-of-payment defenses. In the case at bar, the Providers argue that, because these

14

defenses were rejected in the administrative proceeding in *Shapo*, the Association is barred by collateral estoppel from raising them again in this case.

Collateral estoppel is an equitable doctrine that precludes a party from relitigating an issue decided in a prior proceeding. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 295 (1995). "When properly applied, collateral estoppel or issue preclusion promotes fairness and judicial economy by preventing relitigation in one suit of an identical issue already resolved against the party against whom the bar is sought." *Kessinger v. Grefco, Inc.*, 173 Ill. 2d 447, 460 (1996). The threshold requirements for application of collateral estoppel are: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final determination on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Herzog*, 167 Ill. 2d at 295. In Illinois, administrative decisions have collateral estoppel effect where a department's determination is made in proceedings that are adjudicatory, judicial, or quasi-judicial in nature. *John O. Schofield, Inc. v. Nikkel*, 314 Ill. App. 3d 771, 782 (2000); *Bagnola v. SmithKline Beecham Clinical Laboratories*, 333 Ill. App. 3d 711, 717 (2002).

In the case at bar, the Association argues that the first two elements of collateral estoppel have not been met. According to the Association, the issues decided in the administrative proceeding in *Shapo* were not identical to the issues presented in the instant proceeding and there was no final determination on the merits in the *Shapo* proceeding. The Association contends, in addition, that it would be inequitable to apply collateral estoppel in this instance.

1. Identity of Issues

The Association's Medicaid defense is based on section 6-8(8)(b)(ii) of the Act, which provides:

"[T]he Association shall not be required to pay, and shall have no liability to, any provider of health care services to an enrollee

***

if and to the extent such a provider has agreed by contract not to seek payment from the enrollee for services provided to such enrollee or if, and to the extent, as a matter of law such provider may not seek payment from the enrollee for services provided to such enrollee." 215 ILCS 125/6-8(8)(b)(ii) (West 2004).

This provision contains two limitations on the Association's liability. The first limitation applies to those providers that have agreed by contract not to seek payment from the enrollee. This includes any hospital provider under contract with an HMO to provide medical services to its enrollees. Under section 2-8 of the Health Maintenance Organization Act (HMO Act), such contracts must contain a "hold-harmless" clause in which the provider agrees that, "in no event, including but not limited to *** insolvency of the [HMO] ***, shall the hospital provider or its assignees or subcontractors have a right to seek any type of payment from *** the enrollee." 215 ILCS 125/2-8(a) (West 2004). Thus, under the first limitation of section 6-8(8)(b)(ii) of the Act, the Association is not liable to any hospital provider under contract with an HMO. Given this hold-harmless requirement, it follows that, where the hospital provider is under contract to the

16

HMO, there is no need to apply the second limitation under section 6-8(8)(b)(ii), which forms the basis of the Association's Medicaid defense.

This second limitation applies to providers that, "as a matter of law[,] *** may not seek payment from the enrollee for services provided to such enrollee." 215 ILCS 125/6-8(8)(b)(ii) (West 2004). The Association argues that the requisite legal prohibition is supplied by federal Medicaid law (42 U.S.C. §1396a(a)(25)(C) (2000); 42 C.F.R. §447.15 (2006)) which, according to the Association, bars the Providers in the case at bar from collecting any amount from AHCP enrolles who were also Medicaid recipients. The Association reasons, therefore, that if AHCP's Medicaid enrollees are not liable to the Providers for the services rendered to the enrollees, the Association (under section 6-8(8)(b)(ii)) also has no liability to the Providers for these services.

The Association raised this same defense in the *Shapo* administrative proceeding, which arose from the insolvency of the MedCare HMO. In the *Shapo* proceeding, as in the instant case, a number of health care providers, including the Hospitals, submitted claims to the Association for services rendered to enrollees of the MedCare HMO who were Medicaid recipients. The Association denied the claims, relying on the Medicaid defense.[4] According to the Director in

---

[4]As in the case at bar, the hospital providers in the *Shapo* proceeding who were potentially subject to the Medicaid defense were not under contract to the HMO at issue (the MedCare HMO). If they had been under contract to the HMO, the first limitation under section 6-8(8)(b)(ii) would have sufficed to shield the Association from liability, and there would have been no need for the Association to argue the Medicaid defense.

the *Shapo* proceeding, the Association explained, in a letter to the providers: "Because Medicaid recipients may not be held liable to providers for their medical care (except in limited circumstances, for deductibles and co-payments), pursuant to Section 6-8 of the Act, neither the HMO Guaranty Association nor any MedCare [HMO] enrollee is responsible for the payment of your outstanding claims for services rendered to MedCare [HMO] members who were Medicaid recipients." Many of the providers appealed the denial of their claims to the Director, who subsequently found the Association liable to most of the providers, including the Hospitals. In reaching this decision, the Director in the *Shapo* proceeding rejected the Association's Medicaid defense. In the process, the Director cited some of the same reasons relied upon by the Director in the administrative proceeding in the case at bar (*e.g.*, the apparent contradiction between the Medicaid defense, on the one hand, and the statutory purpose of the Act (215 ILCS 125/6-2 (West 2004)), which is to protect HMO enrollees "and their beneficiaries, payees and assignees" against an HMO's insolvency).

Notwithstanding the foregoing, the Association argues that the issue of the Medicaid defense was not identical in the proceedings in *Shapo* and in the case at bar. The Association points, for example, to a statement by the Director in the *Shapo* proceeding that there was "no law prohibiting a provider from seeking payment from MedCare's Medicaid enrollees." The Association then notes the following statement by the Director in the case before us: "There is no question that medical providers who enrolled in the Medicaid program may not look to the individual Medicaid recipient for reimbursement of medical services provided to such individual

18

other than any deductible, coinsurance or co-payment required by the Medicaid plan to be paid by the individual." The Association contends that these statements express contrasting views regarding whether medical providers may seek payment from Medicaid enrollees. According to the Association, this demonstrates that, with regard to the Medicaid defense, the Director addressed "different issues" in the two proceedings. We disagree.

First, the two statements are not as different as they might appear. While the Director in the case at bar acknowledged that medical providers who were "enrolled in the Medicaid program" could not seek payment from individual Medicaid recipients, the Director nevertheless held that this restriction did not apply to the Providers here because they "were not participating in the Medicaid program." According to the Director, the Providers did not "purposefully submit their claims to the Medicaid state agency (IDPA) seeking reimbursement for those services." The Director thus concluded, as did the Director in the *Shapo* proceeding, that the providers in each case were not barred by law from seeking payment from individual Medicaid recipients who were enrollees of the HMO at issue. The Medicaid defense was rejected in each case. Second, to the extent that the two statements are different, the Association cites no authority for the proposition that, given the identity of the Medicaid defense in the two proceedings, the alleged difference in the two statements in question nevertheless destroys the requisite identity of issue regarding the Medicaid defense.

In a related argument, the Association notes that the Director in the *Shapo* administrative proceeding made no mention of the "not participating in *** Medicaid" reason cited by the

19

Director in the instant case for rejecting the Medicaid defense. The Association further notes that the Director in the *Shapo* proceeding made no mention of an additional reason cited by the Director in the case at bar. In explaining this additional reason for rejecting the Medicaid defense, the Director in the instant case stated: "[a]ny third party liability protection that may have been afforded Medicaid enrollees and/or the Guaranty Association vanished the day that AHCP was liquidated." The Association appears to argue that, even though the Medicaid defense itself was the same in each proceeding, and even though some of the reasons cited for rejecting it were also the same, the Medicaid defense issue nevertheless is not identical unless there is an exact match between the reasons cited in one proceeding for rejecting the defense and the reasons cited in the other. We disagree. The Association cites to no authority for the proposition that, despite the obvious identity of the Medicaid defense in the two proceedings, as well as the identity of some of the reasons cited in the two proceedings for rejecting this defense, the alleged disparity in the reasons cited is nonetheless sufficient to render the Medicaid defense issue itself nonidentical for purposes of collateral estoppel.

Finally, the Association contends that these differences in statements and in reasons cited demonstrate that the Director in the case at bar "backed away from the conclusion the Director reached in the [*Shapo*] Proceeding and attempted to base his ruling on other grounds." In the Association's view, this alleged "back[ing] away" rendered the Medicaid defense issue nonidentical. We do not find this argument persuasive. We note that in each proceeding, the Director rejected the Medicaid defense (for many of the same reasons). Clearly, the Director in

20

the instant case did not back away from the central conclusion that the Medicaid defense did not apply. To the extent that the Director in the case at bar could be said to have "backed away," the Association points to no authority holding that, under circumstances such as those present here, this would destroy the requisite identity of issue.

The Association also argues that there was no identity of issue regarding its referral and rate-of-payment defenses. The Association's referral defense is based on: (1) section 6-8(8)(b)(ii) of the Act (providing that if, as a matter of law, a medical provider may not seek payment from an HMO enrollee for services rendered, the Association has no liability to the provider for these services), and (2) the contract between an HMO and a physician group or an independent practice association (Medical Group) under which the Medical Group agrees to provide services to the HMO's enrollees in return for a capitation fee paid by the HMO. Under these contracts, the Medical Group agrees not to look to the HMO enrollee for payment (except authorized co-payments) for the services rendered. The contracts also provided that if a particular medical service could not be provided by the Medical Group, the Group was authorized to refer the enrollee to a health care professional (referral provider) who could provide the needed service. According to the Association, some of the Providers' claims in the case at bar were for services provided to AHCP enrollees pursuant to a referral from a Medical Group under contract with AHCP. In its referral defense, the Association argues that because a contracted Medical Group could not seek payment from the HMO enrollee for services rendered, the enrollee also had no liability to the *referral provider* for these services. The Association

argues further that if the enrollee had no liability to the referral provider, the Association (under section 6-8(8)(b)(ii)) also had no liability to the referral provider.

The Association raised this same referral defense in both the *Shapo* proceeding and the proceeding in the case at bar. In each case, the Director rejected the referral defense, citing essentially the same reason: the referral provider was not a party to the contract, which was between the HMO and the Medical Group. According to the Director, the contractual provision barring the Medical Group from seeking payment from the HMO enrollee therefore did not apply to the referral provider. Under this view, a referral provider is not barred from seeking payment from the enrollee, and section 6-8(8)(b)(ii) therefore does not shield the Association from such liability.

In the case at bar, the Association argues there is no identity of issue regarding the referral defense because this defense "presents a question unique to this proceeding regarding the nature of the AHCP referral network, as evidenced by the Participating Medical Group Agreement." The Association cites to no authority in support of this statement, nor does the Association present any argument beyond the mere statement of the contention. There is no explanation as to why the AHCP referral network is "unique to this proceeding." The Association's contention here is not persuasive. We agree with the Providers that "[t]he Referral Defense in both cases is based on the same claim that *each* HMO has a 'referral network' supported by Medical Group/HMO contracts which bar HMO enrollee liability." (Emphasis in original.)

22

The Association's rate-of-payment defense is raised as an alternative to its complete defenses against liability. In this defense, the Association argues that, if any hospital-provider claims are upheld against the Association, they should be paid at a rate lower than the usual and customary rate.

The Association's rate-of-payment defense is based on section 6-8(8)(c) of the Act, which provides, in pertinent part:

"In no event shall the Association be required to pay any provider participating in the insolvent organization any amount for in-plan services rendered by such provider prior to the insolvency of the organization in excess of *** (2) the amounts provided by contract between a hospital provider and the Department of Public Aid for similar services to recipients of public aid ***." 215 ILCS 125/6-8(8)(c)(2) (West 2004).

In the case at bar, the Association contends that the Hospitals are subject to this provision and that any of the Hospitals' claims that are upheld against the Association therefore should be paid at the rates the IDPA would have paid for such services, rather than the Hospitals' usual and customary rates.

The Association raised this same rate-of-payment defense in both the *Shapo* proceeding and the proceeding in the case at bar. In each case, the Director rejected this defense. In explaining this decision, the Director in the case at bar cited some of the same reasons as the Director in the *Shapo* proceeding (*e.g.*, the rate-of-payment defense was inconsistent with case

law holding that "a medical provider is entitled to receive his customary charges for services rendered absent a voluntary relinquishment of such a right by the medical provider").

In the case at bar, the Association argues that there is no identity of issue regarding the rate-of-payment defense because, similar to the contention regarding the referral defense, the rate-of-payment defense, according to the Association, "presents a question unique to this proceeding concerning whether the frequency of medical services provided by the Hospitals to AHCP enrollees qualified the Hospital[s] as *** 'provider[s] participating' within the meaning of the [Act's] rate-of-payment limitation [in section 6-8(8)(c)(2)]."  Once again, as in the referral-defense argument, the Association cites no authority in support of this assertion, nor does the Association present any argument beyond the mere statement of the contention.  The Association does not explain why the question at issue is "unique to this proceeding" nor, if it is, why this would necessarily render the rate-of–payment-defense issue nonidentical for purposes of collateral estoppel.  This argument also is not persuasive.

The Association cites three cases in support of the general proposition that collateral estoppel does not apply where there is no identity of issues between the prior and the subsequent proceedings.  These cases are not helpful to the Association.  In *Hassett Storage Warehouse, Inc. v. Board of Election Commissioners*, 69 Ill. App. 3d 972 (1979), which ruled against the application of collateral estoppel, the court did state, in its recitation of the requirements for collateral estoppel, that "the issue decided in the prior adjudication must be identical with the issue presented in the case under review." *Hassett*, 69 Ill. App. 3d at 979.  However, *Hassett*'s

24

refusal to apply collateral estoppel was based on the court's conclusion that "no final judgment on the merits was rendered in the original suit" (*Hassett*, 69 Ill. App. 3d at 979), not on any lack of identity between the issues. With regard to *Dowrick v. Village of Downers Grove*, 362 Ill. App. 3d 512 (2005), where the court declined to apply either collateral estoppel or *res judicata*, the Association directs our attention specifically to this statement by the court: "First, plaintiff's view that the proceedings before the Pension Board and those before the Board of Commissioners involved the same *cause of action* is dubious at best." (Emphasis added.) *Dowrick*, 362 Ill. App. 3d at 516. The court's use of the term "cause of action" indicates that, in this portion of its analysis, the court was referring to *res judicata* rather than collateral estoppel. As the court in *Dowrick* notes, *res judicata*, while similar to collateral estoppel, deals with the same claim or *cause of action*, while collateral estoppel deals with identical *issues*. *Dowrick*, 362 Ill. App. 3d at 516; see, *e.g.*, *Bagnola v. SmithKline Beecham Clinical Laboratories*, 333 Ill. App. 3d 711, 717 (2002) (discussing differences between *res judicata*, or estoppel by judgment, and collateral estoppel, or estoppel by verdict). Moreover, in a different portion of *Dowrick*'s analysis that could have applied to either *res judicata* or collateral estoppel, the focus was on a different requirement, identity or privity of *parties*, rather than identity of issues. *Hassett Storage Warehouse* and *Dowrick* are inapposite to the case at bar.

*Demski v. Mundelein Police Pension Board*, 358 Ill. App. 3d 499 (2005), the third case cited by the Association, deals with the relevant question: whether, for purposes of collateral estoppel, an issue decided in a prior proceeding was identical with an issue decided in a

subsequent proceeding. However, this case also is distinguishable from the case at bar. In *Demski*, a police officer (Kerry Demski) alleged that she injured her back in October 2002 while performing a routine agility test that was required of all officers. Demski applied for workers' compensation benefits, and in August 2003, an arbitrator for the Illinois Industrial Commission (IIC) ruled that Demski was entitled to such benefits. The arbitrator also found a causal connection between the October 2002 agility test and Demski's "subsequent condition of ill-being." *Demski*, 358 Ill. App. 3d at 500. In a separate action, Demski filed an application for a line-of-duty pension. Hearings on this application were held before the police pension board (Board) in December 2003 and January 2004 (after the decision by the IIC arbitrator in the workers' compensation case). With regard to the pension proceeding, Demski sought to invoke collateral estoppel, arguing that the IIC arbitrator's finding in the workers' compensation proceeding regarding the cause of her injury was binding on the Board in the pension proceeding. The Board denied Demski's collateral estoppel request and subsequently denied her application for a line-of-duty pension. The Board found that although Demski was disabled, her disability was not caused by an act of duty, one of the requirements for receiving a line-of-duty pension. According to the Board, the testimony at the pension hearing did not support a finding that Demski's injury occurred during the agility test. In addition, the Board explained that, even if the injury did occur during that test, the agility test was not an act of duty as defined in the Pension Code (40 ILCS 5/1-101 *et seq*. (West 2002)). On administrative review, the trial court reversed the Board's denial of Demski's pension. The court concluded, among other things, that the

Board was bound by the arbitrator's finding in the workers' compensation case that Demski's injury was caused while performing an act of duty.

The appellate court in *Demski* reversed the judgment of the trial court. The appellate court concluded that "[t]he issue decided in the workers' compensation case was not identical to the issue decided in the pension application hearing," and collateral estoppel therefore did not apply. *Demski*, 358 Ill. App. 3d at 502-03. The appellate court explained that the issue before the arbitrator in the workers' compensation case was "whether Demski's accident arose out of and in the course of her employment," while the issue before the Board in the pension proceeding was whether the accident occurred during an "act of duty." *Demski*, 358 Ill. App. 3d at 502-03. Under the Pension Code, an "act of duty" was defined as " '[a]ny act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life.' " *Demski*, 358 Ill. App. 3d at 503, quoting 40 ILCS 5/5-113 (West 2002). Demski's routine agility test occurred during the course of her employment, but it was not an " 'act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life' " (*Demski*, 358 Ill. App. 3d at 503). The issue of whether Demski's accident (allegedly caused by the agility test) occurred during the course of her employment was obviously different from the issue of whether this same accident occurred during the performance of an act of duty. The term "act of duty" is not defined in the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2002)).

27

In the case at bar, by contrast, the issues of whether the Association's Medicaid, referral and rate-of-payment defenses applied to the providers' claims in the *Shapo* and the instant proceedings clearly were identical. In each case, the HMO in question was declared insolvent, and in each case the providers submitted unpaid claims to the Association for services provided to the insolvent HMO's enrollees, most of whom were Medicaid recipients. Moreover, in both the *Shapo* and the instant proceedings, the Association raised the same Medicaid, referral and rate-of-payment defenses. There were no such differences in these defenses from one proceeding to the next, as there were in *Demski* between "course of employment" and "act of duty."

In sum, the Medicaid-defense, referral-defense, and rate-of-payment-defense issues decided in the *Shapo* proceeding were identical with the same issues presented in the proceeding in the case at bar. The identity-of-issue requirement for application of collateral estoppel has been met with regard to the Medicaid, referral and rate-of-payment defenses. .

### 2. Final Determination on the Merits

The Association also argues that there was no final determination on the merits in the *Shapo* proceeding, and collateral estoppel therefore does not apply. The Providers contend, to the contrary, that the decision rendered by the Director in the *Shapo* administrative proceeding was a final determination on the merits, and collateral estoppel does apply.

As previously indicated, the Director in the *Shapo* proceeding found the Association liable to a number of health care providers for services rendered to enrollees of an insolvent HMO, the MedCare HMO. The Association filed complaints for administrative review with the

circuit court, but failed to request a rehearing before the Director. The circuit court dismissed the Association's administrative complaints "because [the Association] did not request a rehearing before the Director prior to filing them and thus failed to exhaust its administrative remedies." *Shapo*, 357 Ill. App. 3d at 126. This court subsequently affirmed the trial court's dismissals of these complaints for failure to exhaust administrative remedies. *Shapo*, 357 Ill. App. 3d at 152.

As a result of the Association's failure to exhaust its administrative remedies, the Director's decision in the *Shapo* administrative proceeding was not appealed. See *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 320 (1989) ("[A]ggrieved parties who fail to exercise all procedural remedies available to them in the allotted time relinquish any opportunity for judicial review"), quoted in *Shapo*, 357 Ill. App. 3d at 132. Where a decision of an administrative agency is not appealed, the decision is given collateral estoppel effect. *John O. Schofield, Inc. v. Nikkel*, 314 Ill. App. 3d 771, 782 (2000), citing *Marco v. Doherty*, 276 Ill. App. 3d 121, 124-25 (1995). Under this principle, the Director's decision in the *Shapo* administrative proceeding is given collateral estoppel effect.

The Association, in arguing that there was no final decision on the merits in the *Shapo* proceeding, focuses on the decision of the circuit court dismissing the Association's complaints for failure to exhaust administrative remedies. The Association cites authority for the propositions that: (1) the failure to exhaust administrative remedies, where required, is jurisdictional, (2) in such instances, the trial court has no jurisdiction to act, and (3) dismissals for lack of jurisdiction are not final determinations on the merits for purposes of collateral

29

estoppel. These propositions would be relevant if the decision at issue were the trial court's dismissal of the Association's complaints for administrative review in *Shapo*. Because these dismissals were for failure to exhaust administrative remedies, this decision by the trial court was not a final determination on the merits. However, as noted, it is the *Director's* decision in the *Shapo* administrative proceeding that is at issue here. Unlike the trial court, the Director in the *Shapo* proceeding looked at the Association's Medicaid, referral and rate-of-payment defenses and rendered a decision on the merits of those defenses. Because the Director's decision was not appealed, it is given collateral estoppel effect. *Schofield*, 314 Ill. App. 3d at 782.

The dissent asserts that the parties in the case at bar cite only to an order entered by the hearing officer in the *Shapo* proceeding, rather than to a final administrative order by the Director, and that an order by the hearing officer is not a final order for purposes of administrative review. While the parties may not have cited to such an order in their briefs to this court, the record in the instant appeals includes copies of the parties' pleadings in the administrative proceeding in the case at bar. In their memorandum in support of their motion for summary disposition in the administrative proceedings below, the Providers do cite to a document which appears to be an order of the Director in the *Shapo* proceedings. In this order, the Director, Nathaniel S. Shapo, states that he "adopt[s], ratif[ies], and approve[s] the Findings of Fact and Conclusions of Law of the Hearing Officer as [his] own, except to the extent of such findings of fact and conclusions of law regarding prejudgment and post-judgment interest." In explaining his decision regarding prejudgment and post-judgment interest, the Director states that

30

he "can find no statutory authority for the Director to assess prejudgment or post-judgment interest."

Moreover, this court in *Shapo* expressly stated that "[t]he Director adopted and approved the hearing officers' findings of fact and conclusions of law on the principal claims in the stipulated amounts [but] *** declined to award interest on those principal amounts, concluding that he lacked statutory authority to do so." *Shapo*, 357 Ill. App. 3d at 128. Indeed, if there had been no final Director's order in *Shapo*, this court's decision affirming the dismissal of the Association's complaints for failure to exhaust administrative remedies would have had no basis. In *Shapo*, as noted, the trial court dismissed the Association's administrative complaints "because [the Association] did not request a *re*hearing before the *Director* prior to filing them and thus failed to exhaust its administrative remedies." (Emphases added.) *Shapo*, 357 Ill. App. 3d at 126; see, *e.g.*, *Shapo*, 357 Ill. App. 3d at 134-36 (discussing the Association's argument that "a petition for rehearing is unnecessary where an administrative decision is rendered at the *highest level* of the agency" (emphasis added)).

In addition, while the Association argues, in the case at bar, that the administrative decision in *Shapo* was not a final determination, the Association does not contend, as a basis for this argument, that there was no Director's decision in that case. Rather, in its briefs to this court, the Association repeatedly refers to the administrative decisions in *Shapo* as being those of the Director.

Notwithstanding the foregoing, the Association argues that it would be improper to apply collateral estoppel in these circumstances because, in failing to request a rehearing before the Director in the *Shapo* administrative proceeding, the Association did not intend to concede that the Director's rulings were correct. The Association contends that where, as here, it is the losing party's own actions which result in a prior ruling's being given collateral estoppel effect, it is proper to consider whether the losing party intended to concede the issue. The Association points, for support, to *Talarico v. Dunlap*, 177 Ill. 2d 185 (1997).

This argument is presented for the first time in the Association's reply brief. Under Supreme Court Rule 341, arguments raised for the first time in a reply brief are deemed waived. 210 Ill. 2d R. 341(h)(7); *People ex rel. Village of Vernon Hills v. Village of Lincolnshire*, 283 Ill. App. 3d 266, 271 (1996).

Even if the argument were not waived, we note that *Talarico*, the case cited by the Association in support of this contention, is inapposite to the case at bar. The relevant question in *Talarico* was whether the plaintiff, who had pleaded guilty in a prior criminal proceeding, was collaterally estopped from alleging in a subsequent civil suit that his criminal conduct was drug-induced. In his guilty plea in the criminal proceeding, the plaintiff admitted to having committed the crimes "intentionally and knowingly." *Talarico*, 177 Ill. 2d at 188. The issue in the subsequent civil case was whether Accutane, a drug prescribed to the plaintiff by one of the defendants in the civil suit, "*instead*[] contributed to cause [the plaintiff's] criminal conduct." (Emphasis added.) *Talarico*, 177 Ill. 2d at 193. The court in *Talarico* acknowledged that these

two issues were identical and that the other two threshold elements of collateral estoppel had been met. However, the court held that collateral estoppel did not apply. In explanation, the court pointed to the circumstances in which the plaintiff pleaded guilty in the criminal proceeding, and found that these circumstances "combine[d] to rebut the inference that [the plaintiff's] admission on the issues of intent and knowledge was treated by him with entire seriousness." *Talarico*, 177 Ill. 2d at 198. In the court's view, the plaintiff could not realistically be said to have conceded these issues. Accordingly, the court rejected the application of collateral estoppel. The court also emphasized that its holding was based "on the particular facts of this case." *Talarico*, 177 Ill. 2d at 200.

In the case at bar, unlike *Talarico*, the prior proceeding was a civil, not a criminal, matter. Moreover, the "concession" exception was applied in *Talarico* only after it was established that the three threshold requirements of collateral estoppel had been met. Here, by contrast, the Association advances this exception as part of its argument against one of the three collateral-estoppel requirements: the final-determination-on-the-merits element. In view of the emphasis in *Talarico* on the "particular facts" in that case, we conclude that *Talarico* has no application to the case at bar.

In sum, the Director's decision in the *Shapo* proceeding was a final determination on the merits for purposes of collateral estoppel. The second requirement for application of collateral estoppel has been met. The third requirement, that the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication, has clearly been satisfied. The

Association was a party in the *Shapo* proceeding, and the Association does not argue otherwise. Accordingly, the three threshold requirements for collateral estoppel have been met with regard to the Association's Medicaid, referral and rate-of-payment defenses.

### 3. Equitability

The Association argues that, regardless of whether the threshold elements of the doctrine have been met, considerations of fairness should preclude the application of collateral estoppel in this case. In making this argument, the Association notes the difference between offensive and defensive collateral estoppel. According to the Association, the former (offensive collateral estoppel) refers to situations such as the case at bar where "a plaintiff seeks to prevent a defendant from relitigating an issue previously decided [against the defendant]." The latter (defensive collateral estoppel) occurs, the Association asserts, "where a defendant who was not a party in a prior proceeding seeks to prevent a plaintiff from relitigating an issue previously decided [against the plaintiff]." The Association correctly notes that, according to our supreme court, "'offensive collateral estoppel ... brings into question considerations of fairness.' *Herzog v. Lexington Twp.*, 167 Ill. 2d 288, 296, 657 N.E.2d 926, 930 (1995)." In further support of the argument that fairness is an important consideration in the application of offensive collateral estoppel, the Association points to *In re Owens*, 125 Ill. 2d 390, 399 (1988), where the court stated: "[C]ircuit courts must have broad discretion to ensure that application of offensive collateral estoppel is not fundamentally unfair to the defendant, even though the threshold requirements for collateral estoppel are otherwise satisfied." The Association also cites *United*

34

*States v. Mendoza*, 464 U.S. 154, 78 L. Ed. 2d 379, 104 S. Ct. 568 (1984), which rejected the application of offensive collateral estoppel against the United States government.

The difficulty with the Association's argument is that the term "offensive collateral estoppel" refers to *nonmutual* offensive collateral estoppel, just as the defensive form refers to nonmutual defensive collateral estoppel. In *Herzog*, one of the Association's cited cases, the court expressly refers to these two terms as "[n]onmutual offensive collateral estoppel" and "[n]onmutual defensive collateral estoppel." *Herzog*, 167 Ill. 2d at 295. *Herzog* further states: "This court has cautioned against the indiscriminate application of offensive collateral estoppel where there is *no mutuality of parties*." (Emphasis added.) *Herzog*, 167 Ill. 2d at 295-96.

There undoubtedly is legitimate concern regarding the application of offensive collateral estoppel, but that concern applies where the plaintiff was *not* a party to the previous proceeding. There is nothing in the cases cited by the Association indicating that such concerns about fairness are present where the plaintiff *was* a party to the prior proceeding. In the case at bar, the Hospitals (which, under the Director's order, were awarded some 94% of the amounts to be paid in this case) *were* a party to the *Shapo* proceeding. Accordingly, the offensive collateral estoppel being applied here is mutual (rather than nonmutual), at least with regard to the (University of Chicago) Hospitals' claims. It is true that the other plaintiff in this case, the Practice Plan (a group of physicians who were employees and faculty members of the University of Chicago), was not a party to the *Shapo* proceeding. However, given the close links between the Hospitals and the Practice Plan, as well as the Practice Plan's much smaller share of the amounts awarded

35

by the Director ($292,000 versus $5 million), we conclude that only in the most technical sense could it be said that the collateral estoppel being applied in this case is *non*mutual. We conclude, contrary to the Association's contentions, that the fairness concerns prompted by the application of nonmutual offensive collateral estoppel are not present in this case. Such concerns therefore do not preclude the application of collateral estoppel here.

In a related argument, the Association points to *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71 (2001), which noted a "narrow exception" under which "preclusive effect will be denied to a prior determination of an unmixed question of law made in an unrelated action." *Du Page Forklift*, 195 Ill. 2d at 79. This exception applied where: (1) the issue was one of law and the two actions involved claims that were substantially unrelated, or (2) a new determination was warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws. *Du Page Forklift*, 195 Ill. 2d at 80. In its one-sentence reference to this exception, the Association does not indicate which of these alternatives it believes is applicable. We conclude that neither applies in this instance. With regard to the first alternative, we have already held that the issues of the Medicaid, referral and rate-of-payment defenses are identical in the two proceedings at issue here. Accordingly, these claims are not "substantially unrelated." As to the second alternative, the Association mentions no "intervening change in the applicable legal context." Furthermore, we have already concluded, in effect, that the application of collateral estoppel in

this instance would not result in the "inequitable administration of the laws." We reject the Association's contention that the exception noted in *Du Page Forklift* applies in the case at bar.

In sum, because (1) the issues of the Medicaid, referral and rate-of-payment defenses decided in the *Shapo* proceeding are identical with the same issues presented in the proceeding in the case at bar, (2) the decision on these issues in the *Shapo* administrative proceeding was a final adjudication on the merits, and (3) the Association was a party in both proceedings, we conclude that collateral estoppel bars the Association from relitigating these same issues in the instant case. With regard to the Medicaid, referral and rate-of-payment defenses, we affirm the circuit court's judgment affirming the Director's rejection of the latter two of these defenses, and we reverse the circuit court's reversal of the Director's rejection of the Medicaid defense.

Two claims remain to be addressed in this case: the Providers' contention that the circuit court erred in affirming the Director's denial of their claims for prejudgment and postjudgment interest, and the Association's claim that the hearing officer erred in denying the Association's discovery requests.

Prejudgment and Post-Judgment Interest

In their motion for partial reconsideration of the Director's order in the case at bar, the Providers asked the Director to award prejudgment interest in the amount of $649,739.18 and to "mandate that the Association shall be liable for any postjudgment interest as it may accrue." The Director denied the Providers' motion, stating that he could "find no statutory authority for the Director to assess prejudgment or post-judgment interest." On administrative review, the

circuit court affirmed the denial of prejudgment and post-judgment interest. The Providers

contend that it was error for the circuit court to affirm this denial. The parties agree that the

standard under which this question is reviewed is abuse of discretion. *General Star Indemnity*

*Co. v. Lake Bluff School District No. 65*, 354 Ill. App. 3d 118, 129 (2004); *Bank of Chicago v.*

*Park National Bank*, 277 Ill. App. 3d 167, 174 (1995).

With regard to prejudgment interest, the circuit court asserted that, in order for an award

of prejudgment interest to be proper, an "instrument in writing" was required. According to the

court, the instrument that the Providers alleged satisfied this requirement was not an instrument

in writing. The court therefore found that "an award of pre-judgment interest is not authorized."

In our view, this decision was not an abuse of discretion.

We reach a different conclusion as to the circuit court's decision affirming the denial of

postjudgment interest. In explaining this decision, the circuit court addressed only the question

of whether the Director had authority to award such interest. No reference was made to the

circuit court's own authority to award postjudgment interest. However, section 2-1303 of the

Code of Civil Procedure (735 ILCS 5/2-1303 (West 2004)), which deals with postjudgment

interest, is mandatory. As this court stated in *Longo v. Globe Auto Recycling, Inc.*, 318 Ill. App.

3d 1028 (2001):

"Courts have held that the legislature did not vest the trial court with discretion in

assessing interest under section 2-1303 of the Code. [Citations.] Rather, imposition of

statutory interest at the rate of 9% from the date the final judgment was entered is

mandatory." *Longo*, 318 Ill. App. 3d at 1039.

We note, in addition, that the Association has effectively conceded this issue. The Association

argues only that, if the Association is not liable for the Providers' claims, no postjudgment

interest should be awarded. We have already held that the Association is barred from raising the

Medicaid, referral and rate-of-payment defenses in this case. The Association therefore is liable

for the claims as determined by the Director in the administrative proceeding below.

Accordingly, the circuit court abused its discretion in affirming the denial of postjudgment

interest.

The Discovery Order

In August 2002 (prior to the administrative hearing in the case at bar), the Association

filed a motion to take discovery. About a month later (September 23, 2002), the hearing officer

issued an order granting some of the Association's discovery requests but denying most of them.

The hearing officer specifically declined to allow any discovery regarding possible additional

defenses, explaining that the hearing would be limited to those defenses originally cited by the

Association in denying the Providers' claims. On administrative review, the circuit court's order

of July 6, 2005, did not address the denial of the Association's discovery requests. However, the

circuit court confirmed in a later order (July 18, 2005) that any decisions that had not been

reversed in the court's previous orders were affirmed. The order denying the Association's

discovery requests (discovery order) thus was affirmed by the circuit court. The Association

contends that the discovery order should be reversed. We also review this issue for an abuse of discretion. *Kankakeeland Community Action Program, Inc. v. Department of Commerce & Community Affairs*, 197 Ill. App. 3d 1067, 1076 (1990); *Wegmann v. Department of Registration & Education*, 61 Ill. App. 3d 352, 356 (1978).

Section 2402.170 of the Director's procedures for conduct of administrative hearings provides, in pertinent part:

"a) The following discovery procedures shall be ordered by the Hearing Officer upon the written request of any party *where necessary* to expedite the proceedings, to ensure a clear or concise record, to ensure a fair opportunity to prepare for the hearing, or to avoid surprise at the hearing:

1) production of documents or things;

2) depositions;

3) interrogatories.

b) The Hearing officer *may restrict such discovery where necessary to prevent undue delay or harassment*." (Emphases added.) 50 Ill. Adm. Code §2402.170 (1973).

In the case at bar, the Association argues, among other things, that the denial of its discovery requests "precluded the Association from presenting a complete defense to [the Providers'] claims." According to the Association, this denial was an abuse of discretion. We disagree. In our view, it was not unreasonable to limit the Association's discovery to those

40

defenses originally cited by the Association in denying the Providers' claims. This limitation of discovery by the hearing officer was not an abuse of discretion.

## CONCLUSION

For the reasons set forth above, we affirm the judgment of the circuit court affirming the Director's rejection of the Association's referral and rate-of-payment defenses. In addition, we affirm the remainder of the circuit court's judgment, with the exception of those portions (1) affirming the Director's denial of postjudgment interest, (2) rejecting the argument that collateral estoppel should preclude the Association from relitigating its Medicaid defense, and (3) reversing the Director's rejection of the Medicaid defense. We reverse these latter three portions of the circuit court's judgment. The cause is remanded to the circuit court for proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

GARCIA, J., concurs.

CAHILL, J., dissents.

Nos. 1-05-2422 & 1-05-2548, Cons.

JUSTICE CAHILL, dissenting:

I respectfully disagree with the majority's use of collateral estoppel to avoid reaching the merits of this case. The majority concludes an "identity of issues" exists between this case and the administrative proceeding in Shapo because the Director of Insurance in both cases "cited some of the same reasons" for rejecting the Medicaid defense: "(*e.g.*, the apparent contradiction between the Medicaid defense, on the one hand, and the statutory purpose of the Act (215 ILCS 125/6-2 (West 2004)), which is to protect HMO enrollees 'and their beneficiaries, payees and assignees' against an HMO's insolvency)." Slip op. at 18. The grounds relied on for rejecting the Medicaid defense in each case are different. The finding central to the Director's decision here was that the providers did not participate in the state Medicaid program or purposefully submit their claims for Medicaid reimbursement. It was this finding that the Director relied on to distinguish Banks v. Secretary of Indiana Family & Social Services Admininstration, 997 F.2d 231, 243-44 (7th Cir. 1993) (Medicaid providers are prohibited from seeking payment from Medicaid recipients under section 447.15 of Title 4 of the Code of Federal Regulations (section 447.15) (42 C.F.R. §447.15 (2006)). The administrative order in Shapo, on the other hand, addresses directly whether section 447.15 prohibits a provider from seeking payment from a Medicaid recipient. Whether the providers in Shapo participated in the Medicaid program was not a consideration in the analysis.

A provider's status as a Medicaid provider may be outcome determinative of whether the provider may seek payment from Medicaid recipients. If Medicaid providers are prohibited from such action under section 447.15, there can be no recovery against the Association under section 6-8(8)(b)(ii) of the Act (215 ILCS 125/6-8(8)(b)(ii) (West 2004)). I find the majority's conclusion that

42

collateral estoppel applies under these circumstances unpersuasive. The parties in the two proceedings are the same; the issues are not.

I find equally troublesome the procedural oddities that attended these proceedings. First, although the providers raised collateral estoppel in their motion for summary disposition on the Medicaid defense, the argument does not appear to have been considered. If, as the providers argue, the Shapo proceeding was outcome determinative of this proceeding, why did the Director not address the issue? Second, the parties have not cited a final administrative order from the Shapo proceeding in the record on appeal here. The parties and the majority cite only to an order entered by the hearing officer, which is not a final order for purposes of administrative review. See 215 ILCS 5/407 (West 2002).

Section 6-8(8)(b)(ii) of the Act limits the Association's liability to providers "if and to the extent ***, as a matter of law such provider may not seek payment from the [patient]." 215 ILCS 125/6-8(8)(b)(ii) (West 2004). The Association argued, and I agree, that participating Medicaid providers are prohibited from seeking payment from Medicaid recipients under section 447.15 (42 C.F.R. §447.15 (2006); see also Banks, 997 F.2d at 243-44). The Director here found the law did not apply because the providers did not participate in the Medicaid program. But, as the trial court pointed out and the record confirms, the providers were under contract to provide Medicaid services. The contract is dispositive of whether the providers were Medicaid participants during the relevant time period. The Director's finding to the contrary is clearly erroneous.

I would reverse the Director's decision denying the Association's motion for summary judgment on the Medicaid defense.